W. F. FITZGERALD, Appellee, v. THE CITY OF SIOUX CITY, Appellant.

Quieting title: LIEN OF SPECIAL ASSESSMENT. Where a city attempts to collect special assessments for street improvement through county officials by a tax sale, the provisions of Code, section 1425

apply, and a purchaser at the sale for taxes and special assessments, to whom the deed issues, takes title free from the entire assessment and may have his title quieted against them.

**Same.** Special assessments by a city which have been certified to the county auditor, but are not brought forward on the treasurer's books as required by Code, section 1389, cease to be a lien upon the property.

**Same.** Special assessments delinquent for more than five years are barred by the statute.

**Same.** Special assessments, not levied by the front foot rule as required by statute, are not a lien upon the property.

**Tax deed.** The effect of a tax deed, following the statute, is determined by the law existing at the time of the sale.

*Appeal from Woodbury District Court.*—HON. JOHN F. OLIVER, Judge.

WEDNESDAY, OCTOBER 26, 1904.

SUIT in equity to quiet plaintiff's title to certain lots in the city of Sioux City. His claim thereto is under tax deeds issued by the county treasurer of Woodbury county for taxes for the years 1892 to 1896, inclusive. Defendant admitted the issuance of the deeds, but claimed that the property was still subject to certain special assessments made against it for improvement purposes, and that plaintiff was not entitled to have his title quieted as against them. The trial court found for plaintiff, and defendant appeals.— *Affirmed.*

*J. N. Weaver,* for appellant.

*Wilber Owen,* for appellee.

DEEMER, C. J.— The case was tried on an agreed statement; hence the facts are not in dispute. From this it appears that plaintiff holds a tax deed for certain of the lots in question, issued pursuant to a regular tax sale held in the year 1897 for taxes on the property for the years 1892-96, inclusive. In the year 1891 the defendant levied a special grading tax on all of these lots, and in the year 1890 levied

a special paving tax against some or all of them, and also a special tax for curbing. The resolutions for these improvements provided for the payment of the special taxes in five equal installments, due in ninety days, two years, four years, six years, and eight years from the date of levy. Unpaid installments, as they became due from time to time, were certified to the county auditor of Woodbury county, and by him placed upon the tax lists and delivered to the county treasurer. At the time of the tax sale all taxes and special assessments so certified had been due and unpaid for more than two years, and the property had been advertised and offered for sale for all taxes, including special assessments, and had remained unsold for want of bidders for more than two years. At the sale, plaintiff bid in the property for a portion of the tax, including State, county, and city taxes. All special taxes were included in this sale, save the last two installments on a portion of the lots which had not been certified to the county treasurer. The sale was made pursuant to section 1425 of the Code, to which we shall presently refer. Subsequently these last two installments were certified to the county auditor, and were by him placed on the tax list and delivered to the county treasurer. In December, 1900, another tax sale was held for these special taxes, and also county and States taxes for two years, and plaintiff again bid in the property at this sale for a portion of these taxes, and now holds a treasurer's certificate therefor. The city treasurer has accepted the city's *pro rata* share of the money received from these tax sales, and has given credit for the amount so received upon the books of the city. Since the sales referred to, the county treasurer has not brought forward upon his books any of the special taxes assessed by the city.

At the time the special assessments were made there was an ordinance of defendant city which read as follows:

SECTION 1. That on or before the first Monday in September in each year hereafter the city treasurer shall make

out a list of all delinquent special taxes and assessments upon his books levied or assessed in said city under and by virtue of any ordinance of said city against any lot, lots, parts of lots or lands in said city for the collection of which suit has not been commenced, as provided by law and the ordinances of said city; which list shall show the name of the person against whom said special taxes, charges, and assessments were made, the lot, lots, parts of lots or parcels of land chargeable therewith, for what purpose the same was assessed, the amount, the time when the same became delinquent, and the amount of interest and penalty then accrued thereon, and when so made he shall transmit the same to the city clerk, who shall forthwith certify the same to the county auditor of Woodbury county and be by him placed upon the tax books of the county; the same to be collected by the county treasurer and by him paid over in the same manner as by law provided for the collection of other city taxes.

The special assessments were not levied according to frontage, but with reference to area. It appears that some of the owners of the lots paid part of the installments of special taxes without protest. The tax deeds show sales for all taxes, interest, and costs, and are each and all dated April 11, 1902. There is, however, no direct reference therein to special taxes or assessments.

These are all the facts which are deemed relevant to a proper solution of the case, and the point to be determined is the effect of these sales upon the special taxes or assessments. Defendant says that the tax sales did not satisfy or in any manner affect these special assessments, save perhaps to reduce the amount thereof in the sums credited by the city treasurer; that the property is still liable for the balance due; and that a lien exists thereon for the balance; while plaintiff argues that these special taxes were extinguished and satisfied by the sales and deeds, in so far as the city is concerned, and that he is entitled to have his title quieted. A proper solution of the issue thus presented depends upon the construction to be placed upon statutes with reference to these matters.

Section 1425 of the Code, which was in force when these sales were made, reads as follows:

Each treasurer [county] shall on the day of the regular tax sale or any adjournment thereof offer and sell at public sale to the highest bidder all real estate which remains liable to sale for delinquent taxes and shall have previously been advertised and offered for sale for two years or more and remained unsold for want of bidders, general notice of such sale being given at the same time and in the same manner as that given of the regular sale. Any taxes on such real estate in excess of the amount for which the same was sold shall be credited to the treasurer by the auditor as unavailable and it shall be reported to him by the auditor of State who shall give the county credit therefor.

Chapter 20, page 18, Acts Twentieth General Assembly, in force when these special assessments were levied, provides for the assessment of the cost of certain street improvements upon the lots abutting thereon in proportion to the number of front feet, and provides that they become delinquent in ninety days, two years, four years, six years, and eight years from the day of levy, and that they shall draw interest and become a lien upon the property. It also provides that the property may be sold for the payment of any delinquent installment at any regular or adjourned sale, with the same penalties, forfeitures, and right of redemption, and certificates and deeds on such sales shall be made in the same manner and with like effect as in case of sales for non-payment of ordinary city taxes, provided that such sale shall not affect the lien for any installment which shall subsequently become delinquent. It also provides that the city council may provide by ordinance for the mode of making and returning the assessment. The act also provides for the issuance of bonds, and for their payment out of special assessments. Section 481 of the Code of 1873 provided that the city might by ordinance, if it so elected, cause delinquent assessments and taxes to be certified

to the county auditor, and be collected and paid over by the treasurer in the same manner as other city taxes.

Section 495, of the same Code provided for the certification to the county auditor of all city taxes, to be placed upon the tax-books of the county in the same manner as county taxes, and collected by the county treasurer; and the provisions for the sale of property against which county and State taxes were levied were made applicable to city taxes so certified. And such sales were to be treated in all respects as though made for county and State taxes. "And the county treasurer shall include said delinquent taxes so certified, with the delinquent State and county taxes on his books and collect the same by sale of real or personal property in the same manner as required by statute for delinquent State and county taxes; and all sales of property for such delinquent municipal taxes shall be as valid and in all respects be deemed and treated as though such sales had been made for delinquent State or county taxes." Section 902 of the present Code, in effect when these sales were made, reads as follows:

All assessments and taxes of every kind and nature levied by the council, except as otherwise provided by law, shall be certified by the clerk on or before the first Monday in September to the county auditor and by him placed upon the tax list for the current year, and the county treasurer shall collect all assessments and taxes so levied in the same manner as other taxes, and when delinquent they shall draw the same interest and penalties. Sales for such assessments and taxes when delinquent, shall be made at the same time and in the same manner as such sales are made for other taxes, and should there be other delinquent taxes or assessments due from the same person, and collectible by the county treasurer, the sale shall be for all such delinquent assessments and taxes, and all the provisions of law relating to the sale of property for delinquent taxes shall be applicable so far as may be to such sales.

The city ordinance to which we have referred was undoubtedly passed to meet the provisions of the laws above

quoted.   Section 1389 of the Code of 1897 requires the county treasurer, on receiving the tax list, to enter thereon all taxes remaining unpaid for previous years, and provides that, if he fails to do so, the tax shall cease to be a lien upon the property.   This is a virtual re-enactment of section 845 of the Code of 1873.   The section was amended by chapter 48, page 32, Acts Twenty-eighth General Assembly, but the amendment need not be set out, as it does not affect this case. Section 1444 of the Code of 1897, which is practically a re-enactment of previous laws, provides that a tax deed shall vest in the purchaser all the right, title, and interest of the former owner, and all interest and claim of the State and county thereto.

It is perfectly plain that if section 1425 of the Code refers, or should be made applicable to, assessments for street improvements, plaintiff's case is won.   Surely it applies to ordinary city taxes, and, if the city elects to collect its special assessments through the county officials by tax sale, we know of no reason why it should not be made applicable to these assessments.   That such was the legislative intent was manifest, we think, from the provision of the law which says that the purchaser at tax sale shall take the property subject to the lien of unpaid installments of special assessments.   That the city so understood is evident from its acceptance without protest of its proportionate share of the taxes paid by the purchaser at tax sale.   That they were included in the taxes for which the property was sold is conceded, and that they should have been is clear from a study of the statutes to which we have referred.   See, as sustaining these conclusions, *Morrison v. Hershire,* 32 Iowa, 275.   *Dennison v. City of Keokuk,* 45 Iowa, 266, relied upon by appellant, is not in point.   The taxes in that case were not certified to the county auditor by the county treasurer, nor was a deed executed by him.   There was a sale by the city, under its special charter, but its deed did not have the effect of a county

1. LIEN OF SPECIAL AS-SESSMENTS: sale.

treasurer's deed, under the law as it then stood.    That former owners paid part of these assessments, and made no objection thereto, is in no manner binding on plaintiff.    He is not claiming under them, but through an independent title under his tax deed.    Having been regularly sold and gone to tax deed, plaintiff, as purchaser, under section 1425 of the Code, takes his title free from these special assessments, and is entitled to have a decree quieting it as against them.

But there are other reasons why the city's lien is extinguished.    The taxes were not brought forward after the sale in 1897, as required by law, and they for

2. SAME.

that reason alone ceased to be a lien on the property.    *Talcott v. Noel*, 107 Iowa, 470.

Moreover, the statute of limitations operates as a bar to most of them.    For all assessments delinquent for more than five years before the bringing of this

3. SAME.

action no recovery may be had.    They are barred by the statute.    *City of Burlington v. R. R.*, 41 Iowa, 134.

Again, the special assessments were not levied according to the front-foot rule, as the statute required; and plaintiff, who took all the title of the former owner, as well as an independent title from the State, may contest

4. SAME.

the validity thereof.    In order to make them a lien upon his property, the statute authorizing them must have been strictly followed.    *Zelie v. City*, 94 Iowa, 393; *Coggeshall v. City*, 78 Iowa, 235; *Ware v. Jerseyville*, 158 Ill. 234 (41 N. E. Rep. 736); *Baxter v. Jersey City*, 36 N. J. Law, 188.

Defendant's contention that plaintiff's tax deeds do not, on their face, cover more than State and county taxes, is without merit.    This instrument follows the language of

5. TAX DEED.

the statute, and its effect is to be found from the laws existing when the sale was made. These laws, it seems to us, relieved the property from the lien of all special taxes at that time delinquent which had

been certified to the county auditor, and also of all delinquent taxes not carried forward as required by law. Jaggard on Taxation, pages 613–618.

The decision of the trial court is correct, and it is *affirmed*.