E. R. BENNETT et al., Appellees, v. G. C. GREENWALT, Treasurer of Polk County, Appellee, C. S. MISSILDINE, Intervenor, Appellee, MAX B. RUFFCORN, Intervenor, Appellant, CITY OF DES MOINES, Intervenor, Appellee.

No. 44539.

June 20, 1939.

Francis J. Kuble and Howard M. Hall, for plaintiff-appellees.

C. S. Missildine and H. Pierce Witmer, for Missildine, intervenor-appellee.

Harding Ruffcorn & Jones and Jas. F. Smith, for Ruffcorn, intervenor-appellant.

F. T. Van Liew and Sam Orebaugh, for City of Des Moines, intervenor-appellee.

BLISS, J.—This is another Polk county tax case. Like a number of its predecessors, it is a by-product of the scavenger tax sales of May and December 1935, and of January 1937. At these sales Polk county was the purchaser of a great many parcels of real estate. After deducting resales, assignments, and redemptions, it was still the holder of tax certificates and tax deeds on approximately twelve thousand pieces of property, at the time of this litigation. In the summer of 1937, Greenwalt, the county treasurer, who had succeeded Munn, who, as such treasurer, had made the sales, informed the board of super-

visors, and the county attorney, that he thought it was his duty, under the law, to advertise and offer for sale, at the annual December 1937 tax sale, all real estate, against which there were delinquent taxes, including all such property on which Polk county held tax certificates or tax deeds. Thereafter the members of the board of supervisors filed their petition in equity. against the treasurer praying that he be enjoined from advertising, offering or selling any parcel of real estate on which Polk county, Iowa, held certificates of purchase or tax deeds, by virtue of being a purchaser of real estate at the aforesaid tax sales. Against a great many of these parcels there were unpaid and unmatured special assessment certificates which had been levied thereon, for grading, paving, sewer, and other improvements, benefiting the property.

Plaintiff's petition, among other matters, alleged: that the tax sale records of the treasurer's office contained specific descriptions of each tract sold to the county, to which tax certificates and tax deeds were issued, and which had been assigned, or redeemed, and by reference, each description was made a part of the petition; that under section 7244, of the 1935 Code of Iowa, the treasurer was barred from selling any parcels on which the county held tax sale certificates, at the annual tax sale, in December 1937; that the liens of all special assessment certificates, against any of said parcels which had gone to tax deed, whether due or to become due, had ceased to be liens, upon the execution of said tax deeds; that the treasurer intended to sell said parcels to pay said assessments, unless restrained; that the expense of advertising and selling said parcels would fall upon the plaintiffs; that any such sales would be wrongful, under Code sections 7293 and 7294, and it would be the duty of the treasurer to refund any such purchase money; that under the law the said property of the county was not taxable; and that the holders of special assessment certificates had lost any rights which they had, by failing to purchase property on which they had liens, at the tax sales, and by failing to procure assignments under section 6041 of the 1935 Code. The prayer was as hereinabove stated.

Missildine filed a petition of intervention alleging that he was a taxpayer of Des Moines, interested in the success of the plaintiffs, and, by reference, incorporated in his petition the prayer and all allegations of plaintiff's petition.

Ruffcorn, for himself and certain clients, filed a combination petition of intervention and answer, in which he alleged: that he was the owner of eleven special assessment certificates, and the trustee for a number of owners and holders of other such certificates on property within the limits of Des Moines, which were all issued prior to January 1, 1930; that he admitted Polk county was the apparent owner of a large number of scavenger tax sale deeds, but denied their validity and insisted that they be established only by strict proof; that he admitted that a large number of properties had been purchased by the county at such tax sales, on which no notices had been served to redeem therefrom; that all of said special assessment certificates were issued in payment of street improvements, as provided by contract, and at a time when section 7244 of the 1931 Code, unamended by chapter 82 of the Acts of the 46th General Assembly, was in force, and a part of said contract, and required the treasurer to annually offer at public sale all real estate against which there were delinquent taxes; that said amendment by the legislature was unconstitutional in that it impaired his contract right to have his special assessments collected by the county treasurer through tax sale under the provisions of section 7244, as it existed in the 1931 Code of Iowa; that section 7244, as amended, prohibits the sale of property on which the county holds tax sale certificates as distinguished from property on which others hold tax certificates or tax deeds, and for that reason is discriminatory and in contravention of the fifth and fourteenth amendments to the Constitution of the United States, and of section 6, Article I, of the Constitution of Iowa; that the treasurer is required under sections 7244, 6037, 7252 and 7246 of the 1935 Code to advertise said property for tax sale; that the extra expense of the tax sale is no basis for the injunction, and that it is not illegal. He prayed that the injunction be denied and that the treasurer be ordered to advertise and sell as required by the above mentioned Code sections.

The City of Des Moines intervened and adopted, as its own, the allegations and prayer of Ruffcorn's pleading.

The county treasurer, Greenwalt, appeared pro se, and filed answer, denying the allegations of plaintiff's petition, asked that the suit be tried at once, and that all petitions filed be dismissed.

Motions to dismiss and strike were filed by the plaintiffs against the pleadings of the intervenors, and the latter reciprocated with like motions. All were submitted with the case.

The treasurer, as a witness for plaintiffs, testified that he would have offered the property involved at tax sale had the petition not been filed; that the publication cost was 30 cents a description, and for the 12,000 properties involved would have amounted to $3,600, and that the expense for extra clerical help and other items of labor and expense would approximate one dollar a description, or about $12,000, making the total expense for advertising and selling and conveying the involved property, about $15,600; and that his only desire in the matter was to be properly advised by the court as to his duty. The only exhibits offered by the plaintiffs were twelve books, designated as Tax Sale Registers, showing the record of the scavenger tax sales in May 1935, December 1935, and January 1937. No tax deed nor tax certificate held by the county was introduced in evidence. No notice to redeem; and no affidavit of service, nor proof or return of service, was introduced. The Tax Sale Registers show the owner's name, the person in whose name the property is taxed, the legal description of the property, the years advertised for sale, the amount of the tax levied for each year, with interest and costs, the purchaser, the amount paid by him, to whom assigned, by whom redeemed, with the date and amount paid in redemption. It also shows the date of filing the notice to redeem and affidavit of service, and the date when the tax deed is issued, and the name of the grantee. Any delinquent special assessments are shown after each description. By agreement these registers were introduced without further identification, with the right of all parties to make such legal objections to them or corrections as might be deemed necessary. None of the properties sold to the county, at the May 1935 sale were advertised or sold at the December 1935, or January 1937 scavenger tax sales. But this was not true of property sold to others than the county, at the May sale. At the time of these tax sales and at all times previous, the only checking or examination of the records, in the treasurer's office, prior to the issuance of a tax deed, was to ascertain whether redemption had been made, and the date of the filing of the notice to redeem and the affidavit of service, so as to determine whether the ninety days for redemption had expired. The notices to redeem

and the affidavits of service were merely filed, and were never checked or examined in any way for any purpose, or to see whether they were correct, or in proper form, or the service good, or were legally sufficient to permit the issuance of the tax deed. The tax certificate was checked with the records to ascertain if the description was correct. The only information which the treasurer's office has as to property owned by the county, is as shown by the tax registers.

The record discloses that the intervenor, Ruffcorn, represented thirteen holders and owners of special assessment certificates, other than himself, the face value of which approximated $100,000. It also appeared that there were thirty or forty companies and persons, who invested in, or collected, such certificates. There were individual owners, also. None of these were parties to this suit, or were, in any way, represented therein. These certificates were contracts issued by the city of Des Moines, and each stated the amount thereof, the installments and amount of each, when, where, to whom, and how payable, and for what improvement issued, and on what property each was a lien. They further recited that they were issued by virtue of the statutes of the State of Iowa, the ordinances of the city of Des Moines, and its adopted resolution of authorization, and were payable with interest at six percent from the date of the assessment, at the office of the county treasurer.

It was conceded that the appellant, Ruffcorn, had never made any attempt to procure the assignment of any certificate of tax sale of any of the properties, against which he or his clients held special assessment certificates. He gave specific reasons for not asking for the assignments in certain instances which to him appeared good. Nothing appears of record that the board of supervisors had by resolution authorized any assignment of any of the county's tax certificates. He testified that in his investigation of the tax sale records he had frequently found irregularities therein which would have prevented him from obtaining a valid tax deed, after procuring an assignment of the tax sale certificate. He further testified that he had been prevented from demanding the assignment of hundreds of tax sale certificates, due to injunction actions that had been commenced, upon which there had been no dissolution of the injunction, or no hearings in the actions. These suits had

been pending for weeks, months, and in some instances, for years.

From the testimony of the delinquent special assessment collector of the city of Des Moines, offered by that intervenor, it appeared that prior to 1929 the city issued special assessment certificates to contractors in payment of improvements, but since that time bonds were generally sold and the contractor paid in cash, and as the special assessments were paid to the county treasurer he paid or credited them to the city for remittance to the bondholders. He testified that the city had several thousand dollars in specials against property that was sold to the county at the three scavenger tax sales. He further testified that the purchaser at scavenger tax sales seldom pays anything on the delinquent special assessments, but pays only on general taxes. He also testified that the city was interested in collecting all special assessments since it guaranteed the bonded special assessments. Both he and Ruffcorn testified that the special assessments were paid in faster when the properties were advertised to be sold for the delinquent assessments.

On December 7, 1937, the judgment and decree of the court was entered, stating:

"It is, therefore, now ORDERED, ADJUDGED, and DECREED that the defendant, G. C. Greenwalt, County Treasurer of and for Polk County, Iowa, and his successors in office, be and is hereby permanently and perpetually restrained and enjoined from advertising, offering for sale, or selling at tax sale any real estate on which Polk County, Iowa, is the holder and owner of a certificate of purchase issued on said real estate at tax sale heretofore conducted by the County Treasurer of Polk County, Iowa.

"It is further the JUDGMENT OF THE COURT that the defendant and his successors in office be and is hereby permanently and perpetually enjoined and restrained from advertising, offering for sale, or selling at tax sale *any real estate for special assessments where a tax deed has issued for said real estate based on a tax sale for general taxes* and the said special assessments were a lien at the time of such tax sale. [Italics ours.]

"It is further the JUDGMENT OF THE COURT that the costs be taxed equally between all parties to this action."

The intervenor, Ruffcorn, is the only party who has appealed.

In all matters and proceedings in the trial below, the intervenor city of Des Moines, joined with the intervenor Ruffcorn, in resisting the plaintiffs in the relief sought by them. In this court, however, the intervenor city of Des Moines has joined forces with the plaintiff-appellees, and with Missildine, intervenor-appellee, in resisting its erstwhile comrade, Ruffcorn, the intervenor-appellant. Improvement special assessment certificates and bonds (chapter 311, section 6104 et seq., Code of Iowa, 1935), while issued by the city of Des Moines, are not, ordinarily, obligations to be paid by it, but their holders look for payment to the special assessments, levied against specific property by its resolution, and to be collected by the county treasurer. Nevertheless the city of Des Moines is liable for the application of the special taxes (section 6123, Code of 1935), and the suggested form of bond (section 6114) states that it is to be paid "only out of the fund created by the collection of said special tax * * * *and for the assessment, collection, and payment hereon of said special tax, the full faith and diligence of said city of Des Moines are hereby irrevocably pledged."* (Italics supplied.)

I. It will be noted that the specific relief which the plaintiffs prayed for was "a judgment permanently restraining and enjoining the said defendant (county treasurer) from publishing, offering or selling said real estate at any tax sale so long as Polk County, Iowa, is the owner and holder of the certificate of Purchase *or so long as Polk County, Iowa, is the owner of said real estate by virtue of a tax deed;* * * * ." (Italics ours.) Injunction from sale is prayed only as to such lands as *Polk County* holds tax deeds. There is no basis for any other or further relief or injunction in any allegation of their petition. There was no evidence introduced justifying any greater or further injunctive relief. No issue was raised by pleading, prayer or proof by any party to the suit, relative to enjoining the county treasurer from the sale of lands held by tax deed grantees, other than Polk county.

It will be further noted, however, that in the italicized portion of the court's decree, set out above, the county treasurer is enjoined from selling at tax sale for special assessments *any* real estate, where a tax deed has issued based on a tax sale

for general taxes at a time when the said special assessments were a lien, even though Polk county be not the owner of the land by tax deed. In other words the county treasurer is restrained from selling at tax sale for delinquent special assessments, in all cases where a tax deed *has* issued for real estate based on a tax sale for general taxes, and the said special assessments were a lien at the time of the tax sale, regardless of who the owner or holder of the tax deed may be. This paragraph of the judgment and decree is erroneous in that the relief is not consistent with the case made by the petition and embraced within the issues. Section 11573, Code of 1935. We have also repeatedly held that a court should not render judgment or decree which has no foundation in the allegations or prayers of the pleading, and is not justified by the evidence, issues, or any theory upon which the case was tried. Schuster Bros. v. Davis Bros., 185 Iowa 143, 170 N. W. 292; Long v. Wilson, 186 Iowa 834, 173 N. W. 76; Benson v. Sawyer, 216 Iowa 841, 249 N. W. 424; Fidelity & Casualty Co. v. Bank of Plymouth, 213 Iowa 1058, 237 N. W. 234; Lafever v. Stone, 55 Iowa 49, 7 N. W. 400; District Township of Eureka v. Farmers Bank, 88 Iowa 194, 55 N. W. 342; Bottorff v. Lewis, 121 Iowa, 27, 95 N. W. 262; Marder v. Wright, 70 Iowa 42, 29 N. W. 799; Hines v. Horner, 86 Iowa 594, 53 N. W. 317.

While the prayers of the petition, petitions of intervention, and the answer of the defendant, all ask for other general, equitable relief, the allegations and proof, and the specific relief prayed for, clearly indicate that the part of the decree criticised was not within the purview of any of the general prayers for relief. Johnston v. Myers, 138 Iowa 497, 116 N. W. 600; Davis v. Davis, 209 Iowa 1186, 229 N. W. 855; Johnson v. Mantz, 69 Iowa 710, 27 N. W. 467.

II. The appellees seek to sustain the decree, insofar as it enjoins the defendant ''from advertising, offering for sale, or selling at tax sale any real estate for special assessments, where a tax deed has issued for said real estate based on a tax sale for general taxes, and the special assessments were a lien at the time of such tax sale,'' upon the ground that such tax deeds extinguish the lien of such special assessments.

We fully agree that such a tax deed, when valid and effective, displaces and extinguishes the liens of all special assessments against the property conveyed, existing at the time

of the general tax sale, and without regard to whether the said assessments were then due or were to become due. Some of the cases so holding are Fitzgerald v. Sioux City, 125 Iowa 396, 101 N. W. 268; Iowa Securities Company v. Barrett et al., 210 Iowa 53, 230 N. W. 528; Western Securities Co. v. Black Hawk Nat. Bank et al., 211 Iowa 1304, 231 N. W. 317, and Fergason et al., v. Aitkin et al., 220 Iowa 1154, 263 N. W. 850.

In each of those cases the party, relying upon the tax deed, brought all adverse parties into court, and, by proper and competent evidence, established the execution, delivery, and the validity of his tax deed. He introduced in evidence his tax deed, complete and regular upon its face, in the form prescribed by statute, executed, acknowledged, and recorded, all as required by statute.

The appellees introduced no proof of this kind. They neither offered nor introduced any tax deed. There was no proper or sufficient evidence introduced in this action that any tax deed had ever been executed and delivered to Polk county, or that Polk county held any such deeds. The appellees rely upon the provisions of sections 7287 and 7288 of the Code. They can claim nothing under these sections because they did not avail themselves of their provisions, by introducing any properly executed and recorded tax deeds of Polk county. We are not saying, of course, that a tax deed is not valid until a court so decrees. A tax deed is valid if all of the statutory requirements have been properly performed. But we do say that a court cannot decree a tax deed to be valid without proper evidence thereof. Every tax deed, if any, which Polk county holds may be a valid tax deed, but the trial court had no right to so hold under this record. Since the validity of any such deeds was not established, the extinguishment of the liens of any special assessment on any of the property conveyed by them, was not established. The injunction against the defendant as to these properties, upon the ground that the special assessment liens had been displaced by tax deeds, based upon general or ordinary tax sales, was without authority or warrant.

"The tax deed is the last step in the execution of the statutory powers; it furnishes the tax payer the official evidence of his title, and authorizes him to enter upon the possession and

1124

enjoyment of the estate.'' Black on Tax Titles, 2d Ed., sec. 389.

''The only deed which can have such prima facie effect is a deed valid on its face. * * * It is accordingly of the utmost practical moment to carefully scrutinize in advance every deed which may be offered in evidence on trial, to determine if it be valid, void, or correctible.'' Jaggard on Taxation (Iowa), section 82.

Code Section 7284 directs the issuance of the tax deed immediately upon the expiration of the ninety-day redemption period. Section 7285 directs the recitals which such deed is to contain, and sets out the acknowledgment verbatim. The provisions of section 7286 are:

''Execution and effect of deed. The deed shall be signed by the treasurer as such, and acklowledged by him before some officer authorized to take acknowledgments, *and when substantially thus executed and recorded in the proper record* in the office of the recorder of the county in which the property is situated, *shall vest* in the purchaser all the right, title, interest, and estate of the former owner in and to the land conveyed, and all the right, title, interest, and claim of the state and county thereto.'' (The italics are ours.)

It will be noted that it is only after and *when* such a tax deed, as is described in section 7285, has been executed and acknowledged and recorded, as prescribed in that section and in section 7286, that title vests in the grantee. And it follows, as a corollary, that until title has so vested, no adverse interest is divested.

Section 7287 provides: ''Presumptive evidence. The *deed shall be presumptive evidence in all the courts* of this state in all controversies and actions in relation to the rights of the purchaser, his heirs or assigns, to the land thereby conveyed, of the following facts: [Here follows seven stated facts.]''

Section 7288 provides that ''the deed shall be conclusive *evidence''* of certain stated facts. All of these statutory provisions clearly and plainly state and indicate that unless the tax deed is received, there is no evidence before the court. This is the construction which the court has placed upon these statutes. In Brownell v. Storm Lake Bank, 63 Iowa 754, 757, 19 N. W. 788, 790, the court said:

"Under the statute, (section 897 of the Code, [section 7286, Code of 1935]) the tax deed, when executed as provided by law, and recorded, operates to vest in the purchaser all the right, title and interest of the former owner of the land conveyed by it, and it is presumptive evidence, at least, 'that all things whatsoever required by law to make a good and valid sale, and to vest the title in the purchaser, were done.' *One asserting title under such deed has but to introduce it in evidence.* And the law puts upon his adversary the burthen of showing its invalidity." (Italics ours.)

No such burden was placed upon the appellant in this action. The foregoing excerpt from the Brownell case was relied upon and quoted with approval in Fidelity Inv. Co. v. White, 208 Iowa 519, 223 N. W. 884, 225 N. W. 868.

In Shaffer v. Marshall, 206 Iowa 336, 337, 218 N. W. 292, the question arose on a demurrer to the petition, which alleged the due execution of the tax deed, and the tax deed and the record thereof were set out in the petition. The court said:

"The sufficiency of the tax deed is in no manner challenged. It was, therefore, presumptive of the regularity of all antecedent procedure. It was, *in and of itself,* a complete and sufficient proof of title." (Italics ours.)

In Soukup v. Union Inv. Co., 84 Iowa 448, 453, 51 N. W. 167, 168, 35 Am. St. Rep. 317, the court said:

"The *deed* being prima facie evidence of the regularity of all proceedings prior to its execution, it must be presumed," etc. (Italics ours.)

Such is the language, plain import, and holdings in Fuller v. Armstrong, 53 Iowa 683, 6 N. W. 61; Baker v. Crabb, 73 Iowa 412, 35 N. W. 484; Knudson v. Litchfield, 87 Iowa 111, 54 N. W. 199; Grove v. Benedict, 69 Iowa 346, 28 N. W. 631; McCash v. Penrod, 131 Iowa 631, 109 N. W. 180.

Our latest decision bearing upon this question, was at the present term of court, in the case of Inter-Ocean Reinsurance Co. v. Morrison et al., 225 Iowa 1336, 1339, 283 N. W. 909, 910, where Justice Miller, speaking for the court, said:

"The *tax deeds introduced in evidence* are presumed to be valid. Grove v. Benedict, 69 Iowa 346, 28 N. W. 631. * * *

The *introduction of the deeds in evidence* entitled appellee to all the statutory presumptions [recited in sections 7287 and 7288 of the Code]. Petersborough Sav. Bank v. Des Moines Sav. Bank, 110 Iowa 519, 81 N. W. 786. * * * The *deeds were properly received in evidence* and their reception established a prima facie case for appellee.''

The necessity of having the tax deed before the court, to determine its regularity and effect, is clearly shown in the early case of Long et al. v. Burnett, 13 Iowa 28, 39, 81 Am. Dec. 420, wherein the court referred to the absence in the recitals of the deed of certain steps in the antecedent procedure, and said :

''A failure to make this statement in an undertaking to recite all the facts, is evidence, by implication, that it never had been done; if so, the omission vitiated the sale, and repels the *prima facie* force of the deed, according to authority of the case of Rayburn v. Kuhl et al., 10 Iowa 92, which case turned alone upon this point.''

The plaintiffs alleged in their petition that Polk county had taken tax deeds to certain parcels of real estate purchased at scavenger tax sale as shown on the Tax Sale Registers. The appellant, in his petition of intervention, admitted that Polk county was the ''apparent owner'' of a considerable number of properties with ''apparent title'' under tax deeds issued at the said tax sales, and then further alleged : ''But as to the validity of such tax deeds, he has neither knowledge nor information sufficient to form a belief, and for that reason denies the same and requires that such tax deeds be established by strict proof.''

No tax deed was offered or received in evidence. The only proof offered or introduced were certain books designated ''Tax Sale Registers''. No illustrative page of these registers is shown in the record before us, but we have hereinabove set out what appears on a page. It shows the date of the issuance of a tax deed and the grantee therein, but no other fact with reference to a tax deed. It contains no verbatim copy of a tax deed. It shows but few of the matters of which a tax deed is either presumptive or conclusive evidence. Under the record made there was no proper or sufficient proof that the lien of any special assessment was extinguished by any tax deed. In the absence of such proof the court was not justified in enjoining

tax sales for delinquent special assessments against property because of the alleged existence of tax deeds to said property.

Under the record in this case, there is no proper or lawful warrant for the injunction restraining the defendant and his successors, on this phase of the case.

Statutory provisions similar to sections 7287 and 7288 have been enacted in nearly every state to better protect the holders of tax titles, and to avoid the severity of the common law rule which requires proof of every material step antecedent to the execution of the tax deed, before permitting its admission in evidence. But it has been the quite uniform rule of all courts to construe such statutory enactments, and, in fact, all statutory provisions whose tendency is adverse to the owner of the title, most strictly in his favor. See briefs in 30 A. L. R. 8 et seq. and in 88 A. L. R. 264 et seq. Decisions of this court holding to that rule in general are Fidelity Inv. Co. v. White, 208 Iowa 519, 223 N. W. 884, 225 N. W. 868; Geil v. Babb, 214 Iowa 263, 242 N. W. 34; Johnson v. Miller, 217 Iowa 295, 251 N. W. 747; Huiskamp v. Breen, 220 Iowa 29, 260 N. W. 70.

III. What we have said disposes of the case insofar as the appellees asked that the defendant and his successors in office be enjoined from selling at tax sale, for delinquent special assessments, real estate to which Polk county holds tax deeds. In addition to such relief, they asked that the defendant be enjoined from selling at tax sale real estate to which Polk county holds tax sale certificates. The proof in reference to the county holding tax sale certificates differs from that in reference to the county's alleged tax deeds. While no tax certificate held by Polk county was offered or admitted in evidence, the record of the tax sales made by the treasurer, in the Tax Sales Registers, was competent evidence of their issuance to Polk county. McCready v. Sexton & Son, 29 Iowa 356, 374, 4 Am. Rep. 214. Accordingly, the correctness of the trial court's decision on this phase of the case is properly before us.

The appellees prayed "for an order temporarily restraining and enjoining the said defendant from advertising, offering or selling any parcel of real estate on which Polk County, Iowa, holds a certificatae of purchase on said real estate by virtue of being a purchaser of said real estate at a former tax sale, * * * and that the court upon the final determination of the above entitled action enter judgment granting

to said plaintiffs a judgment permanently restraining and enjoining the said defendant from publishing, offering or selling said real estate at any tax sale so long as Polk County, Iowa, is the owner and holder of the certificate of purchase.'' The trial court granted the permanent injunction as prayed.

The appellees based this prayer for relief, and the trial court granted it upon the authority of Code section 7244. While the decree does not specifically state that the injunction covers and includes sales for delinquent special assessments, as well as sales for delinquent ordinary taxes, the memorandum opinion of the court makes it clear that the decree includes sales for both.

It is our judgment that the decree is erroneous in enjoining and restraining the defendant county treasurer, and all future incumbents of that office, from selling at tax sale, for delinquent special assessment liens against it, any property for which Polk county holds tax sale certificates of purchase. It is our judgment that the restriction in section 7244 against tax sale for delinquent taxes, of any property against which a county holds a tax sale certificate, refers only to sales for ordinary taxes, that is general and special taxes for governmental purposes, and not to special assessments according to benefits.

Section 7244, Code of 1935, provides:

''Annual tax sale. Annually, on the first Monday in December, the treasurer shall offer at his office at public sale all lands, town lots, or other real property on which taxes of any description for the preceding year or years are delinquent, which sale may be made for the total amount of taxes, interest, and costs due and unpaid thereon, *provided, however, that no property, against which the county holds a tax sale certificate, shall be offered or sold.''* (Italics ours.)

With the exception of the italicized portion of this section, and the changing of the date of the sale, this section has remained without material change, since it first appeared as section 763 of the Revision of 1860. The words, ''the treasurer shall offer at his office at public sale all lands, town lots, or other real property on which taxes of any description for the preceding year or years are delinquent, which sale shall be made for the total amount of taxes, interest, and costs due and unpaid thereon'', have appeared almost identically, and with no change in the meaning of the context, in sections 763 of the Revision,

871 of the Code of 1873, 1418 of the Code of 1897, and 7244 of all later Codes.

At the time section 763 of the Revision was enacted, there was statutory provision (sec. 1064, Rev. of 1860) empowering cities and towns to improve streets, alleys, public grounds, etc., and to assess and collect on adjacent property a just and equitable proportion of the expense. This charge was against the owner and the property, and was a lien upon the latter. The charge might be collected and the lien enforced by a proceeding at law, or in equity, either in the name of the municipal corporation, or by a person authorized by it. (Sections 1068, 1069, 1070 of the Rev.) There was then no statutory authority to collect the charge or to enforce the lien, of a special assessment, in the manner in which ordinary taxes were collected, and there never had been any such statutory authority. Section 1123 of the Revision provided for the certification by the city or town clerk to the county auditor, of all municipal levies of general and special taxes, for collection by the auditor, the same as county and state taxes. This section was repealed in 1864 by chapter 25 of the Acts of the 10th General Assembly, which Act amplified the provisions of the repealed section, and after providing for the certification of the regular taxes, it further provided that, "other delinquent taxes due from the same person, or a lien on the same property", might be so certified and sold as delinquent county and state taxes. In 1870, the 13th General Assembly, by chapter 14 of its Acts, clarified the quoted language of chapter 25, 10th General Assembly, by clearly and definitely providing that, in addition to the court proceedings of sections 1068, 1069, and 1070, of the Revision, any municipal corporation might by ordinance "cause any or all delinquent charges, assessments, and taxes, made or levied under and by virtue of and for the purposes specified in said sections, or referred to therein, to be certified to the County Auditor * * * and be collected * * * by the treasurer of the county, in the same manner as taxes." This act appears as section 481 of the Code of 1873. Other acts were thereafter passed authorizing certification to the auditor and collection by the treasurer in the manner of ordinary taxes, special assessments for various improvements. See chapter 51, 15th G. A. (1874) (improvement of alleys), chapter 162, section 3, 17th G. A. (1878) (construction of sewers in cities of first class), chaper 20, section 3, 20th G. A. (1884)

(general street improvements), chapter 168, section 12 et seq., 21st G. A. (1886) (certain cities of the first class for paving, curbing and sewers), chapter 6, section 7, 23d G. A. (1890) (changing water courses through cities).

All of these acts and various others were carried into the Code of 1897 and became sections 829 and 902 thereof, and sections 6227, 6228, 6229 and 6037 of the Codes of 1924, 1927, 1931 and 1935. Other sections of the 1935 Code providing for the certification of special assessments to the county to be placed on the tax list of the treasurer, are sections 5966, 6051, 6034 and 6101. Section 6090, relative to assessments for storm floods, by specific reference, makes section 6037 apply to such assessments.

None of these acts nor any of the subsequent corresponding Code sections have, at any time, or in any way, changed, added to, or amended section 7244 of the 1935 Code. It has remained, as originally enacted, the legislative direction to, and authority of, the county treasurer to sell all real estate against which there are delinquent taxes of any description. Standing by itself, it has never been, and is not now, authority for the county treasurer to sell real estate for delinquent special assessments, of any kind. Such authority of the treasurer has always been, and is now, solely because of separate and specific legislative enactments. The authority which a county treasurer now has to sell real estate for delinquent special assessments, is not by the provisions of section 7244, but by the provisions of Code sections 6037, 6227 and 6228.

Section 6037 is as follows:

"Tax sale. Property against which a special assessment has been levied for street improvements or sewers may be sold for any sum of principal or interest due and delinquent at any regular or adjourned tax sale, in the same manner, with the same forfeitures, penalties, and right of redemption, and certificates and deeds on such sales shall be made in the same manner and with like effect, as in case of sales for the nonpayment of ordinary taxes."

Section 6051 provides:

"Certification to county auditor. Certificates of such levies [special assessments] shall be filed with the auditor of

the county or counties in which the city is located, setting forth the amount or percentage and maturity of the tax, or each installment thereof, designating by reasonable description the real property upon which the tax is to be levied, certified as correct by the clerk, and thereupon the tax shall be placed upon the tax list of the proper county or counties.''

Sections 6037 and 6051 are in chapter 308, covering street improvements, sewers and special assessments. Chapter 310 has to do with protection from floods in cities and towns, and section 6090 thereof makes section 6037 directly applicable to flood protection assessments, by stating, ''The levy of the assessment, the filing of the certificate of assessment, the payment of interest on installments, the payment of the installments of assessment, and the sale of property for unpaid assessments shall all be in conformity with sections 6010, and 6030 to 6040, inclusive.''

Section 6227 provides:

''Certification of taxes and assessments — collection. All assessments and taxes of every kind and nature levied by the council, except as otherwise provided by law, shall be certified by the clerk on or before the first day of September to the county auditor, and by him placed upon the tax list for the current year, and the county treasurer shall collect all assessments and taxes so levied in the same manner as other taxes, and when delinquent they shall draw the same interest and penalties.''

Section 6228 provides:

''Tax sales. Sales for such assessments and taxes when delinquent shall be made at the same time and in the same manner as such sales are made for other taxes, and should there be other delinquent taxes or assessments due from the same person, and collectible by the county treasurer, the sale shall be for all such delinquent assessments and taxes, and all the provisions of law relating to the sale of property for delinquent taxes shall be applicable so far as may be to such sales.''

These sections are all legislative authorizations directing the county auditor and the county treasurer to proceed with the collection of special assessment by the same proceedings used

in the collection of ordinary taxes. Unless there is definite legislative direction to the contrary the county treasurer cannot escape that duty. The appellees contended, and the trial court found, that there is such legislative denial in the closing words of section 7244, to wit: "provided, however, that no property, against which the county holds a tax-sale certificate, shall be offered or sold."

There had never been any material change in section 7244 or its corresponding predecessors, until these words were added to it.

This amendment was adopted May 3, 1935, and became effective on July 4th following. It is chapter 82 of the Laws of the Forty-sixth General Assembly, and appears as follows:

"Annual *Tax* Sale

"An act to amend section seventy-two hundred forty-four (7244), code of Iowa, 1931, *relating to tax sales.*

"Be It Enacted * * * Section 1. Section seventy-two hundred forty-four (7244) * * * is hereby amended * * * " (by adding the words above referred to).

It will be noted that the title of the act is "to amend section *seventy-two hundred forty-four (7244)*, Code of Iowa, 1931, *relating to tax sales.*"

The title and the body of the act clearly show that the only intention or purpose of the legislature was to amend section 7244 of the Code of 1931, and no other section. No other section is mentioned. Sections 6037, 6227 and 6228 were all in the Code of 1931, in the same form as they exist today, but the act in no way refers to them. If the legislature had intended to exempt property against which a county held tax sale certificates, from sales for delinquent special assessments, it would have added the amending words to each of the three sections above referred to, and particularly to section 6037. In no other way could such an exemption be made effective. It is a well known canon of statutory construction that repeals of statutes, in whole or in part, by implication, are not favored. Schoenwetter v. Oxley et al., 213 Iowa 528, 239 N.W. 118. The sections of the Code which direct the county treasurer to sell real estate for the collection of delinquent special assessments were in no way amended or repealed by chapter 82 of the 46th General Assembly. Where an amending act plainly states that it

amends a specified section or part of an existing statute, it cannot be judicially construed as amending an unmentioned section. This rule is stated in 59 Corpus Juris, section 647, page 1097, as follows:

''An act to amend a particular section in a general law is limited in its scope to the subject matter proposed to be amended. So where a statute purports to amend a designated clause of an existing statute, it will be presumed that such clause is the only one to which the legislature intended the amendment to apply.''

The New Hampshire court in Healey v. Wheeler, 75 N. H. 214, 72 A. 753, held that where a statute purports to amend a designated clause of another statute, there is a presumption that it is the only clause to which the legislature intended it should apply. In his work on Constitutional Limitations, 5th Ed. 179, Cooley states:

''The courts cannot enlarge the scope of the title: they are vested with no dispensing power. The constitution has made the title the conclusive index of the legislative intent as to what shall have operation. It is no answer to say that the title might have been made more comprehensive, if in fact, the Legislature has not seen fit to make it so.''

Both section 7244 and the amending chapter speak only of ''taxes'' and ''tax-sale''. There is no mention of special assessments in either. There is a well known and recognized distinction between a ''tax'' and a ''special assessment''. While neither can exist except by act of the legislature (City of Fairfield v. Ratcliff, 20 Iowa 396) it does not follow that the word ''tax'' or ''taxes'' as found in the constitution, or the statutes of the state, or as ordinarily used or understood, mean the same thing as, or include special assessments. That has been the repeated holding of this court. In Munn v. Board of Supervisors, 161 Iowa 26, 36, 141 N. W. 711, 715, the court, speaking through Justice Ladd, said:

''The tax is levied for the purpose of paying the expenses of the government, and the only advantages therefrom to the taxpayer are to him as a member of organized society, and would have been enjoyed had he no property to tax or had he

1134

evaded taxation. In a sense, then, he is the poorer for having paid, while in theory he who pays a special assessment loses nothing, since he is fully compensated by the special benefits conferred by the improvement.''

In discussing the distinction between ''taxes'' and ''special assessments'', Justice Weaver, in Cornelius v. Kromminga, 179 Iowa 712, 715, 161 N. W. 625, 626, said:

''If assessments of this class were to be treated as 'taxes' in the usual and ordinary meaning of that word, a different conclusion would doubtless have to be reached; but while, generally speaking, special assessments are generally imposed by an exercise of the taxing power, yet a clear distinction is everywhere recognized between a tax in the proper sense of the word and a special assessment. The former may be said to be a contribution or levy imposed upon property for general public purposes, without regard to the question of special benefits conferred, while the latter is imposed only as payment for special benefits conferred upon the property charged, by an improvement the expense of which is thus to be met.''

See, also, Frankel v. Blank, 205 Iowa 1, 213 N. W. 597; Halvorson v. Mullin, 179 Iowa 293, 156 N. W. 289, 161 N. W. 309; Fairfield v. Ratcliff, supra. That is the general holding of the courts elsewhere. In re Commissioners of Elizabeth, 49 N. J. L. 488, 10 A. 363; Bosworth v. Anderson, 47 Idaho 697, 280 P. 227, 65 A. L. R. 1372; Ill. Cent. R. R. Co. v. Decatur, 147 U. S. 190, 197, 13 S. Ct. 293, 37 L. Ed. 132. ''The weight of authority sustains the general proposition that the use of the word ''tax'' does not include the former term.'' Special Assessments, Hamilton ''Law of Special Assessments''; 1 Page and Jones, ''Taxation by Assessment'', sec. 39, page 67; Black on Tax Titles, 2d Ed., sec. 29.

Another matter to be considered on the question of whether the fact that the county held a tax sale certificate of purchase for a piece of property should deprive the holder of a special assessment certificate of the right to have the property offered and sold for a delinquent assessment, is that at the time of the issuance of all of the assessment certificates the statutes of the state required that levies for special assessments be certified to the county auditor to be collected in the manner that

ordinary taxes were. The forms of the special assessment certificates and the bonds issued in anticipation of the payment of the special assessments, as provided for by chapter 311, Section 6104 et seq., of the Codes of 1927 and 1931, clearly indicate this. All of these statutory provisions were in effect at the time the special assessments involved in this action were issued, and prior to the amendment of section 7244, in May 1935.

These certificates and bonds were contracts entered into by the city of Des Moines and those to whom they were issued. It is a well known rule of law that such statutory provisions become a part of contracts made in reliance upon them just as fully as if they were written into them. The contractors and the purchasers of those certificates and bonds took them in reliance upon the statutory provisions. The legislature knew of these provisions and it is not reasonable to assume that it intended to ignore or defeat them by making the amendment to section 7244 apply to them.

It is our judgment that it was not the intention of the legislature, by the amendment of section 7244, to deprive a special assessment certificate or bond holder of his statutory right to have the property against which the assessment is a lien, sold by the county treasurer for the delinquent assessment, because the county may hold a tax sale certificate of purchase thereon. It must be kept in mind that with respect to special assessments for sewer, street and other such improvements, the property of a county is privately owned property (Code section 6019), and it is liable for such assessments in the same manner and to the same extent as other privately owned property.

The appellees urge that the exclusive right of a special assessment certificate or bond holder is to take advantage of the provisions of Code section 6041. When the special assessments in question were levied, the appellant had the rights given to him by that section, and he also had the rights given him by Code sections 6037, 6228. He is still entitled to the rights and privileges of all of these sections. To assume otherwise would be an unwarranted construction of the amendment to section 7244 of the Code.

IV. While the trial court in its memorandum opinion states that it is not passing on the rights of any special assessment certificate holder to challenge the right of the county to procure a tax deed, this concession does not do full justice to

certificate holders. As such holders they have a right to the sale of any piece of property at the annual tax sale against which their delinquent special assessment is a lien. This is a valuable right. The court by its decree deprived them of that right with respect to property against which Polk county holds a certificate of tax sale. There were a great many persons, companies and corporations, having property rights in such special assessments, who were not made defendants in this action, or given an opportunity to resist the action of the appellees. As to these the court had no jurisdiction, and its decree is clearly erroneous.

It is our judgment that section 7244 of the 1935 Code of Iowa does not prohibit the sale of property for delinquent special assessments. The decree of the trial court is, therefore, reversed in all of its parts and provisions. That part of the decree which has been referred to in division I of this opinion is reversed because the relief granted is not within the contemplation of the prayer of the petition. That part of the decree referred to in division II of the opinion is reversed because the record fails to contain any competent evidence to prove that the county held tax deeds. That part of the decree which is referred to in division III of this opinion is reversed because the county is not entitled to an injunction restraining the county treasurer from selling property for delinquent special assessments where the county holds tax sale certificates. That part of the decree which is referred to in division IV of this opinion is reversed because the necessary defendants were not parties to the suit. The costs in the lower court are taxed to the plaintiff-appellees, and all costs of the appeal and in this court are taxed to the plaintiff-appellees, the intervenor-appellee Missildine, and the intervenor-appellee city of Des Moines, equally and jointly.

The decree is remanded to the trial court for entry of judgment and decree in accordance herewith.—Reversed and remanded.

STIGER, SAGER, HALE, and MILLER, JJ., concur.

OLIVER, J., dissents as to division III.

MITCHELL, C. J., and RICHARDS and HAMILTON, JJ., dissent.

MITCHELL, C. J. (dissenting)—I find myself unable to agree with the majority and respectfully dissent.

This is not an action to quiet title, nor is it one to determine who has title to certain property. It is an action in equity to enjoin the county treasurer of Polk county from listing, publishing and selling certain pieces of property to which Polk county holds tax deeds.

The majority holds that because the tax deeds were not introduced in evidence there is no record before this court that Polk county held tax deeds properly executed and recorded. This in face of the fact that there were introduced in evidence, Tax Sales Books Nos. 52, 53 and 54, books kept by the county treasurer and auditor, which show the name of the persons in whom the various parcels of property are taxed, the amount and kind of taxes, the amount for which the property was sold, the person to whom the property was sold, redemption if any, and to whom a tax deed was issued and the date. Thus we find that this record shows the various pieces of property to which the county held tax title. It should also be kept in mind that there is no evidence of any irregularities in the tax deeds held by the county and the intervenor Max Ruffcorn does not allege in his petition or offer any proof showing any irregularities or failure to strictly comply with all laws relating to the conducting of the tax sales or the issuance of tax deeds pursuant to said sales.

The majority concedes that ''a tax deed, when valid and effective, displaces and extinguishes the liens of all special assessments against the property conveyed, existing at the time of the general tax sale''. .

The majority opinion, as I read it, holds in reality that there is a presumption that the tax deed is not properly executed and recorded, and this in face of the direct enactment of the legislature that tax deeds shall be presumptive evidence of certain things and conclusive evidence of other things, sections 7287 and 7288, 1935 Code.

This record shows that it will cost Polk county more than $12,000 to list and publish the properties to which the county holds tax deeds—tax deeds that are not attacked in this case. Tax deeds that can only be attacked by those that come within the provisions of Code section 7290, 1935 Code, and this intervenor makes no such claim.

In my judgment under this decision every county treasurer in Iowa must list, publish and sell every piece of property to

which the county holds tax deed, and against which there are outstanding special assessments. It is hard to estimate the amount of money which will be wasted; it will run into hundreds of thousands of dollars. For Polk county alone it amounts to over $12,000.

The lower court was right in enjoining the county treasurer of Polk county, for the treasurer had a right to presume that the tax deeds to the county were valid, and to list, publish and sell would be not only a useless thing to do, but also an expensive one; one that should bother the conscience of a court of equity so that it would use its power to prevent it.

JUSTICE RICHARDS authorizes me to state that he joins in this dissent.