**COLLIER et al. v. BARTLETT.**

No. 9163—Opinion Filed Sept. 3, 1918.

Rehearing Denied Oct. 23, 1918.

(175 Pac. 247.)

(Syllabus.)

**1. Adverse Possession—What Constitutes— "Possession"—"Actual Possession."**

What constitutes "possession" of land is a mixed question of law and fact; "actual possession" consisting of the exercise of acts of dominion over it, in making the ordinary use of it and taking the ordinary profits it is capable of yielding in its present state.

**2. Equity—Nature of Jurisdiction.**

Equity will not permit a mere form to conceal the real position and substantial rights of parties. It always attempts to get at the substance of things, and to ascertain, uphold, and enforce rights and duties which spring from the real relations of parties. It will never suffer the mere appearance and external form to conceal the true purpose, objects, and consequences of a transaction.

**3. Mines and Minerals — Injunction — Possession of Land—Waste.**

While courts of equity will generally refuse to interfere with possession of land before the right is determined at law, yet, if defendant's possession is not exclusive, and is but an interruption of the prior, open, notorious, and peaceable possession of complainant, an injunction may be allowed, especially in cases where the entry by the defendant was for the purpose of committing waste such as the taking out of minerals.

Error from District Court, Creek County; Ernest B. Hughes, Judge.

Action by H. U. Bartlett against W. J. Collier and others. Judgment for plaintiff, and defendants bring error. Affirmed.

Stuart, Cruce & Riddle and O'Meara, Bush & Moss, for plaintiffs in error.

J. F. Lawrence and John B. Meserve, for defendant in error.

RAINEY, J. H. U. Bartlett, as plaintiff, filed in the district court of Creek county. Okla., his verified petition against the defendants W. J. Collier, W. S. McCray, B. B. Burnett, B. C. Burnett, and Moss Petroleum Company, a corporation alleging in substance that the plaintiff was the owner of and in possession of 200 acres of land in sections 26 and 35, township 19 north, range 7 east; that some time in January, 1917, the defendants, by fraud, without right, and without notice to the plaintiff, went upon said land, cut and removed timber therefrom, destroyed fences, and undertook, through their agents and employes, to make forcible and unlawful entry, and to take possession of said land, and further attempted to hold the premises violently and without right, and at the time of the institution of this suit claimed some right to the possession thereof; that said defendants did not have the possession or right of possession, but through their agents and employes were threatening to use force to interfere with the peaceable possession of the plaintiff, and unless restrained by the court would interfere with plaintiff's possession. It was further alleged in said petition that the lands were valuable for oil; that there were more than three producing oil wells owned by defendants, or some of them, offsetting plaintiff's land, and that, unless the plaintiff was permitted to have the peaceable and undisturbed possession of his land, defendants would take the oil belonging to the plaintiff and would irreparably injure and damage said plaintiff; that said damages could not be compensated, in a money judgment, and that if the defendants were not restrained from interfering with the plaintiff's possession, and at the same time were permitted to continue the operation of the offsetting wells, the plaintiff would lose large and unascertainable sums of money; and that he had no adequate remedy at law. The plaintiff also charged that the offset wells had been operated for about two months, that large quantities of oil had been produced and removed from said premises, and that by reason thereof the plaintiff had been dam-

aged in the sum of $20,000, for which amount judgment was prayed. On plaintiff's application the court granted a temporary restraining order, and after a hearing was had, pursuant to notice at which the respective parties introduced evidence, a temporary injunction was ordered. It is from this action of the trial court that the defendants have appealed to this court. The suit for damages had not been tried at the time the appeal was taken.

The record shows that Mr. Bartlett, the plaintiff, went into possession of the land in controversy in 1906, claiming title thereto under deeds from the purported heirs of Harper Jessie, the allottee of said lands; that he immediately rented the same to one William Blair, who occupied it for about two years, cultivated a portion thereof, and used the remainder for pasture purposes, for which he paid the plaintiff the sum of $40 per year rental; that after Mr. Blair left Mr. Bartlett rented the land to a Mr. Doolin, who had been Mr. Blair's foreman, and who took possession of the land and has occupied the same ever since under rental contracts from year to year, and has paid the rent to the plaintiff, except for the years 1911 and 1912, at which time the United States government attempted to cancel the allotment, and made a tentative filing thereon for another allottee, the rental for said years being paid to the Indian agent. The government, however, abandoned its efforts to cancel the allotment, and since said time Mr. Doolin has held the land under Mr. Bartlett and has paid the rent to him. The record further discloses that a part of the land was in cultivation and the remainder was pasture land; that Mr. Doolin was using the land for grazing and raising feed; that the farm land was on the inside of a big field, and that there was no fence on the east side of it, but that the grazing land was fenced. Mr. Bartlett has paid the taxes on the land since he has claimed to be the owner thereof, but neither he nor Mr. Doolin resided thereon.

Mr. Doolin testified that he had at all times recognized Mr. Bartlett as the owner of the land, and had held possession under him, and that no other person had at any time asserted any claim or right adversely to Mr. Bartlett until in January, 1917, the defendants went upon the premises, and constructed a tank, a small shack, and an oil rig. The testimony with reference to the way in which the defendants went upon the premises is only slightly conflicting. On this phase of the case Mr. Doolin's testimony is as follows:

"Q. Did you ever surrender that possession in the last two years to any one? A. No, sir. Q. Did you authorize any one to come on it? A. Mr. McCray called me up over the 'phone one night, and asked me if I cared if he built a little house over on there inside of the pasture, and I told him I didn't care. Q. Is that all that was said? A. And he asked me if I cared if he built a tank in there, and I said I didn't. Q. Did he mention Mr. Bartlett's name? A. No, sir. Q. Did you know what Mr. McCray's purpose was at that time? A. No; I did not. Q. Was it your purpose or intention at that time to surrender possession to Mr. McCray? A. No, sir. Q. You simply stated to him that you had no personal objections to his building the house? A. Yes, sir. Q. And that you had no personal objection to his building a tank over there? A. Yes, sir. Q. And it wasn't your intention to let him have possession? A. No, sir; and I intended to hold that property the same as I had been."

Mr. McCray, one of the defendants, testified that he was interested in an oil and gas mining lease on the land, and was associated with the Sapulpa Petroleum Company and that he commenced building a house on the premises on the 3d day of January, 1917, With reference to the manner in which he entered upon the land he testified as follows:

"Q. Something was said about your asking for permission to build a house on there? A. Mr. Doolin had his cattle in that pasture; the grass wasn't eat down from the past season; at least it didn't have that appearance, and he was wintering his cattle in there along the creek, and I called him up and told him I had an oil and gas lease on the property, and that I was going to build a house on the corner: that I would have the boys be careful and see that we didn't let his stock get away. Q. You had learned it was his stock? A. Yes, sir."

The evidence further disclosed that the defendants, through some of their employes, occupied the house from the 13th day of January, until the 20th day of March, when the plaintiff procured their arrest for trespassing. The criminal proceedings do not appear to have been prosecuted to a termination at the time of the institution of the present action but seem to have been abandoned. After the arrests plaintiff secured a temporary restraining order, which prevented the defendants from going back upon the premises.

Defendants invoke the proposition of law that courts of equity will refuse to interfere by granting an injunction, where the plaintiff is out of possession and claims posses-

sion against a defendant in possession under a claim of right, and cite numerous authorities in support thereof. This proposition of law is sound, and is not controverted by the plaintiff. His counsel justify the action of the trial court in granting the temporary injunction on the ground that plaintiff was in possession and that courts of equity will grant injunctional relief to a plaintiff in possession against a defendant out of possession who is seeking to gain possession by trespass. The defendants also contend that the plaintiff secured possession of the premises by the abuse of legal process in having some of the defendants arrested; that plaintiff ousted the defendants wrongfully, and for these reasons he is not in court with clean hands, and because of his iniquity a court of equity will grant him no relief.

We think that in determining the correctness of the order of the trial court, the fact of the ouster of the defenants is unimportant, and not decisive of the case, for the reason that the rights of the litigant parties may be correctly determined by their status and relations to each other prior to the ouster of the defendants resulting from the arrests. The title to the land in controversy is disputed, but counsel for plaintiff and counsel for defendants, respectively, properly rest this branch of the case upon the question of possession. Counsel for defendants earnestly insist that the defendants were in possession and that the plaintiff was not in possession, so our first inquiry is naturally directed to the question of what, under the law, constitutes possession. It has repeatedly been held by the courts that what constitutes possession of land is a mixed question of law and fact, and that possession consists of the exercise of acts of dominion over land, in making the ordinary use of it, and taking the ordinary profits it is capable of yielding in its present state. New Jersey & N. C. Land & Lbr. Co. v. Gardner-Lacy Lumber Co., 178 Fed. 772, 102 C. C. A. 220; Lofstad v. Murasky, Judge, 152 Cal. 64, 91 Pac. 1008; Illinois Steel Co. v. Jeka, 123 Wis. 419, 101 N. W. 399; Staton v. Mullis, 92 N. C. 623; Williams v. Buchanan, 23 N. C. 535, 35 Am. Dec. 760; Frisbee v. Town of Marshall, 122 N. C. 760, 30 S. E. 21; Rice v. Frayser (C. C.) 24 Fed. 460; Ft. Dearborn Lodge v. Klein, 115 Ill. 177, 3 N. E. 272, 56 Am. Rep. 133; Gilkerson-Sloss Comm. Co. v. London, 53 Ark. 88, 13 S. W. 513, 7 L. R. A. 403; Elliott v. Pearl, 10 Pet. (35 U. S.) 412, 9 L. Ed. 475; Goodson v. Brothers, 111 Ala. 589, 20 South. 443; 31 Cyc. 925. In Lofstad v. Murasky, Judge, supra, it was held that a person was in actual possession of land where there was such an appropriation of the land by the claimant as conveyed to the community where it was situated visible notice that the land was in his exclusive use and enjoyment, and that such an appropriation was manifested by either inclosing, cultivating, improving or adopting it to such use as it was capable of. It is also well settled that a person may be in possession of land without actually residing thereon. A person may also be in possession of land without a personal representative thereon. Womble v. Pike et al., 17 Okla. 122, 87 Pac. 427; United States v. Rogers (D. C.) 23 Fed. 658, 666; Barstow v. Newman, 34 Cal. 90; Fuller v. Jackson (Tenn.) 62 S. W. 274.

Applying these principles to the facts hereinbefore stated, it seems clear that the plaintiff was in the open, notorious, peaceable, and uninterrupted possession of the land in controversy, and had been for a number of years at the time the defendants went upon the premises to drill for oil and commenced to construct the necessary improvements for that purpose. Did the plaintiff lose possession, and the defendants gain possession, by this entry? We think not. Plaintiff's possession, peaceably enjoyed for so long a time, could be lost either with or without his consent. It would have been lost with his consent if he had transferred his possession to another with the intention to divest himself of it, or had done some act that manifested his intention to abandon possession. He would have lost possession without his consent if another person had driven him away by force, or had taken possession during his absence and had prevented him from re-entering. Bouvier's Law Dictionary, p. 435. There is nothing in this record tending to show that Mr. Bartlett lost possession of the land, either with or without his consent. The fact that Mr. McCray stated that he would admonish defendants' employes to be careful and not let Mr. Doolin's stock get away clearly shows that, when the defendants and their employes went upon the land that they recognized that Mr. Doolin was in possession of the premises, which he was holding for and under the plaintiff. The possession thus obtained by the defendants did not constitute an exclusive or adverse possession as against the plaintiff. The land was only rented to Mr. Doolin for agricultural and pasture purposes, and he certainly was not authorized to give the defendants the right to go upon the premises of his landlord and commit waste, even if he had desired to do so. It is well settled that an entry upon lands for the purpose of commit-

ting waste is a trespass, and it is likewise well settled that the cutting of timber or the taking out of minerals is waste. 14 Ruling Case Law, p. 444, § 145. And such injuries as go to the destruction of the estate are considered irreparable, and a trespass will be enjoined. 22 Cyc. 831, 832.

On the face of the proceedings this controversy hinges upon the question as to which of the contending parties was in possession of the land at the time of the institution of the injunctional proceedings, but the purpose of the contending parties is to secure or hold possession of the surface in order that they may, unmolested, explore for the oil supposed to be beneath, and as they are seeking the wealth below the surface of the land we will look below the surface of the proceedings and examine further into the substance of the controversy. When we bear in mind that the principal purpose of the defendants in going upon this land was to drill for oil, we must conclude that at least so far as Mr. Bartlett was concerned the entry was surreptitious. The entry upon the inclosure of another is a trespass, where it is made surreptitiously as well as where it is made by force. Tidwell v. Chiricahua Cattle Co.. 5 Ariz. 352, 53 Pac. 192.

While the defendants may have believed that they had the right to enter upon the plaintiff's land and to drill for oil, and in so doing did not have any criminal intent to commit a trespass, still, since their original intention was to commit a trespass by taking out minerals, the entry became wrongful ab initio. In High on Injunction. § 356, we find the following qualifications of the general rule that courts of equity will not interfere, by preliminary injunction, to change the possession of real property:

"Notwithstanding the general rule, as stated in the preceding action, by which courts of equity refuse to interfere with possession before the right is determined at law, if defendant's possession is but an interruption of the prior possession of complainant, whose right is clear and certain, an injunction may be allowed without compelling complainant to establish his title by an action at law. The interference in such cases rests, as in cases of nuisance, upon a clear and certain right to the enjoyment of the subject in question. and an injurious interruption of that right, which upon just and equitable grounds ought to be prevented."

Other text-books and authorities are thoroughly in accord with this principle. Hadfield v. Bartlett et al, 66 Wis. 634, 29 N. W. 639; Ex parte Jas. S. Conway, 4 Ark. 302, 303.

In Pomeroy, Equity Jur. (2d Ed.) § 378, it is said:

"Equity will not permit a mere form to conceal the real position and substantial rights of parties. Equity always attempts to get at the substance of things, and to ascertain, uphold, and enforce rights and duties which spring from the real relations of parties. It will never suffer the mere appearance and external form to conceal the true purposes, objects, and consequences of a transaction."

We realize that the conclusion we have reached permits the plaintiff to drill for, remove, and market the oil from the land in controversy, if he desires to do so. If, in fact, he has no legal title to the land, as claimed by the defendants, and the defendants have a duly approved oil lease from the rightful owner (questions not before us at this time), this might work an injustice to them, except for the fact that the courts have ample authority to safeguard their interests, if in a proper proceeding a probability of recovery is shown.

The judgment of the trial court is affirmed.

All the Justices concur.