### PROWANT v. SMITH.

No. 9905.—Opinion Filed Jan. 20, 1920.

Rehearing Denied March 9, 1920.

(Syllabus by the Court.)

1. **Taxation—Void Tax Deed—Effect of Recordation.**

The recordation of a void tax deed does not effect the rights of a purchaser from the owner.

2. **Quieting Title—Issues—Limitation of Action.**

Record examined, and held: That the pleadings of the parties as they now stand do not raise or present for review the question whether the defendant's right of possession is barred by the one-year statute of limitations.

3. **Taxation—Validity of Tax Deed—Statutes Controlling.**

The validity and effect of a tax deed duly executed are to be determined by the statutes in force when the sale was made or certificate acquired, and not by any statute enacted after the sale or issuance of the certificate and before the making of the deed.

4. **Same—Void Tax Deed—Right to Valid Deed**

Where a tax deed has been issued which is void upon its face, the purchaser at the tax sale may, if the sale was in fact valid and that fact is apparent from the record of the tax sale, have as many deeds issued as he desires until he gets a good tax deed.

Error from District Court, Pawnee County; Conn Linn, Judge.

Action by Eva S. Prowant against Isaac Smith to quiet title. Judgment for defendant, and plaintiff brings error. Affirmed.

Orton & Moore, for plaintiff in error.

McCollum & McCollum, for defendant in error.

KANE, J. This was an action commenced by the plaintiff in error, plaintiff below,

against the defendant in error, defendant below, for the purpose of quieting the title to certain lots situated in the town of Quay.

The petition alleges, in substance, that the defendant claims some right, title, or interest in said lots, under and by virtue of certain void tax deeds, the exact nature of which is unknown to the plaintiff; that said defendant should come into court and set up whatever right, title, or interest he claims in said real estate. Wherefore plaintiff prays that her title shall be quieted against the defendant, etc.

The answer of the defendant consisted of a general denial and other allegations to the effect that the defendant acquired absolute title in fee simple to such lots by reason of certain tax deeds, copies of which are attached to plaintiff's petition, marked, respectively, "Exhibit A," "B", and "C." Wherefore the defendant prays that the said plaintiff take nothing in this action; that the title to said lots be quieted in said defendant, and that said plaintiff and all persons through her or under her shall be forever barred from claiming or setting up any right, title or interest in said lots.

The reply of the defendant consisted of a general denial of each and every material allegation contained in the answer of the defendant, contrary to the allegations contained in plaintiff's petition, except such admissions as are thereinafter made, and of other allegations attacking the validity of the tax deeds relied upon by the defendant upon various grounds.

Upon trial to the court, there was judgment for the defendant, quieting his title as prayed for, to reverse which this proceeding in error was commenced.

From the foregoing brief statement it will be observed that the action of the plaintiff was commenced for the purpose of quieting her title to the lots in controversy upon the ground that the tax deeds held by the defendant were null and void. The record shows that the lots were sold to the county for nonpayment of taxes for the year 1904 and that the first tax deed, marked "Exhibit A," was executed to the defendant on the 29th day of March, 1909, and that the same was filed for record on the 16th day of September, 1909; that thereafter, on the 9th day of March, 1914, the defendant secured another tax deed, "Exhibit B," based on the same tax sale, which deed was given for the purpose of correcting the first tax deed, which was conceded to be void. This second tax deed was filed for record on the 28th day of June, 1916, and this action was commenced on the 21st day of April, 1917. After the commencement of this action, and just prior to the time the answer was filed, the defendant secured another tax deed, "Exhibit C," which was also executed for the purpose of correcting the former tax deeds. During all this time the lots remained in the possession of either the plaintiff or her grantor, and are still in possession of the plaintiff.

Counsel for plaintiff in error state their grounds for reversal in their brief as follows:

(1) A void tax deed, even though recorded, is not notice to anyone so as to bar their rights when they purchased from the real owner.

(2) The statute of limitations had run against the defendant, as he had never taken possession of the property nor attempted to do so.

(3) The original tax deed issued to the defendant in this case was executed the same day of the sale, the same being held on the 29th day of March, 1909, and the deed was executed on the 29th day of March, 1909, and for that reason the original deed and the two succeeding deeds are void, as no notice was given.

Assuming that the proposition of law stated in the first ground for reversal is sound, still it is not entirely clear how this can work a reversal of the judgment of the trial court. It is conceded that the first tax deed, which was on file when the plaintiff purchased the lots, was void, but if counsel contends, as they seem to, that because the recorded tax deed was void at the time their client purchased the lot, he acquired absolute title thereto, free and clear of the taxes for which the lots had been previously sold, we are unable to agree with them. Counsel cite Pearson v. Creed, 20 Pac. 302, the California case, to the effect that the recordation of a void tax deed does not affect the rights of a purchaser from the owner. We find no fault with this as an abstract proposition of law, but the right of a purchaser from the owner, in these circumstances, is merely the right to redeem from the tax sale, and we are unable to perceive that the plaintiff herein had undertaken to assert this right in this proceeding.

In support of their second ground for reversal, counsel for plaintiff contend that, inasmuch as the defendant has never taken possession of the premises or commenced an action for that purpose, the one-year statute of limitations (section 7419, Rev. Laws 1910) bars his right to recover the land. It is conceded by both plaintiff and defendant that the first tax deed was void on its face. As was said in Hall's Heirs v. Dodge, 18 Kan. 277:

"There is no necessity for a party putting a defective or void tax deed upon record in this state; for where a person is entitled to a good tax deed, he may have as many tax deeds executed as he desires until he gets a good tax deed."

And it has been held in this state that the statute of limitations does not begin to run on a void tax deed. Lowenstein v. Sexton, 18 Okla. 322, 90 Pac. 410; Keller v. Hawk, 19 Okla. 407, 91 Pac. 778; Holt v. Spicer, 65 Oklahoma, 162 Pac. 686. In these circumstances the one-year statute of limitations did not commence to run against the defendant until he recorded his first valid tax deed. The year within which the defendant had the right to bring an action to obtain possession of the premises had not expired at the time the plaintiff commenced her action to quiet title. It was for this reason, no doubt, that her counsel did not plead lapse of time as one of her grounds for quieting title when she filed her petition. Why the petition was not subsequently amended to include this ground after the expiration of the year, does not appear, for it seems to be well settled that where the landowner has retained possession until the tax purchaser is barred by lapse of time, he may bring suit in equity for the purpose of removing this cloud created by the tax deed. Cadman v. Smith, 15 Okla. 633; Cooley on Taxation, p. 562. On the other hand, neither has the defendant prayed for the possession of the premises in any of his pleadings. The only relief he asked was that his title be quieted, and this is all the relief the trial court granted. In these circumstances we are unable to perceive how the defendant's right of possession can be tried in the present state of the pleadings. As the trial court did not pass directly on this question, it will be left open until it has been raised by the parties by proper pleadings in this or some other action.

The third contention of counsel for the plaintiff in error arose out of the following circumstances:

Nineteen days before the first tax deed was issued, the Legislature enacted a new revenue law (Sess. Laws 1909, ch. 38), section 19, art. 9, of which prescribes the method of making a resale of lands sold to the county for nonpayment of taxes. Section 22, art. 9, of this act provides that, if the land sold for taxation is not redeemed before two years, the purchaser may secure a tax deed upon serving a written notice upon the owner of the land and also upon all persons in possession, and if the land is not redeemed within 60 days after the date of this notice, the deed may issue. The law in force at the time of the tax sale, which was repealed by section 22, supra, did not require service of notice, and the contention is that the tax deed should have been issued in pursuance of the later act.

On this point counsel in their brief say:

"The court will now observe that the resale held in this case by the county was on the same day that the tax deed was issued, hence the county treasurer had no jurisdiction to issue a tax deed, and the recitals of the deed are conclusive evidence that no notice of any kind or character was given or could have been given. The second tax deed, issued on the 9th of March, 1914, but not recorded until June 28, 1916, did not help matters any, as it was also issued without any notice being given and recites in the deed itself that it is given to correct the first deed. The third deed, that was issued in July, 1917, also recites the fact that it was given to take the place of the first deed; therefore the last two deeds could not be legal, since the county treasurer had no jurisdiction or authority to issue the first deed."

The great weight of authority seems to be contrary to this contention. The general rule is laid down in 37 Cyc. 1452, as follows:

"The validity and effect of a tax deed duly executed are to be determined by the statutes in force when the sale was made or certificate acquired, and not by any statute enacted after the sale or issue of the certificate and before the making of the deed."

The following cases hold that the force of a tax deed and the validity of the sale must be determined by the act in force when the sale was made: Rollins v. Wright (Cal.) 29 Pac. 58; McCann v. Merriman (Neb.) 9 N. W. 96; Fitzgerald v. Sioux City, 125 Iowa 396, 101 N. W. 268; Johnson v. Taylor (Cal.) 88 Pac. 903, 10 L. R. A. (N. S.) 818; Smith v. Spillman, 1 A. L. R. 136.

It is not seriously disputed that, where a tax deed has been issued which is void upon its face, the purchaser at the tax sale may, if the sale was in fact valid and that fact is apparent from the record of the tax sale, have as many deeds issued as he desires until he gets a good tax deed. Hall's Heirs v. Dodge, supra; Buhler v. Hysell, 37 Okla. 392, 132 Pac. 140; Graham et al. v. Graham et al., 57 Okla. 672, 157 Pac. 740; White Pine Manufacturing Co. v. Morey (Idaho) 112 Pac. 674; Webster v. Somers (Cal.) 114 Pac. 575; Duggan v. McCullough (Colo.) 59 Pac. 743; Bryan v. Spalding, 20 Kan. 427; Kramer v. Smith et al., 23 Okla. 381; Gibson v. Pekarek et al., a South Dakota case, reported in Ann. Cas. 1912B 944.

As the trial court seems to have correctly decided all the questions presented by the

pleadings as they now stand, the judgment must be affirmed.

OWEN, C. J., RAINEY, V. C. J., and JOHNSON, PITCHFORD, HIGGINS, and BAILEY, JJ., concur.