McGRATH et al. v. EICHOFF.

No. 28746.   Jan. 30, 1940.

Rehearing Denied March 5, 1940.

Application to File Second Petition for Rehearing Denied April 9, 1940.

*100 P. 2d 880.*

Roscoe Bell, of Oklahoma City, for plaintiffs in error.

I. L. Harris and Ted R. Elliott, both of Oklahoma City, for defendants in error.

DAVISON, J. The present action was commenced by the defendant in error, as plaintiff, against the plaintiffs in error and one M. McGrath, as defendants, to quiet his title to lot fifteen (15) in block four (4) of the McKinley Place addition to Oklahoma City, Okla.

In their answer, the defendants included a general denial together with allegations of fact upon which they based the claim that title to the lot in question was then owned by the defendants Joseph N. McGrath and Clarence Kline. The defendants also alleged facts which they maintained rendered void and champertous certain conveyances through which the plaintiff derived his title to the property. To said answer were attached copies of certain deeds through which the defendants Joseph N. McGrath and Clarence Kline deraigned their title. Among these was a tax resale deed issued to the defendant M. McGrath by the county treasurer on June 16, 1924, and filed of record on December 1, 1925.

In his reply, the plaintiff denied the allegations of the defendants' answer, and, among other affirmative allegations, specifically asserted that the resale tax deed issued to the defendant M. McGrath was void on its face.

With the issues joined as we have briefly outlined, the cause went to trial.

At the trial, the defendants objected to the introduction of any evidence by the plaintiff on the ground that his pleadings were insufficient. This objection was overruled, exception taken to said ruling, and the trial proceeded. The defendants also interposed a motion to strike from the plaintiff's reply all that portion thereof pertaining to the invalidity therein attributed to the resale tax deed of the defendant M. McGrath. This motion was overruled and exception taken to said ruling. At the close of the plaintiff's evidence, the defendants demurred thereto, and said demurrer was overruled. After excepting to said ruling, the defendants introduced their evidence. When the cause was submitted

to the trial court, it found the issues in favor of the plaintiff and against the defendants and entered judgment determining the plaintiff to be the owner of the lot and quieting his title thereto against the claims of the defendants.

The defendants Joseph M. McGrath and Clarence Kline have appealed. We will continue our reference to all of the parties as they appeared in the trial court.

Among the errors assigned by the defendants are the alleged errors of the court in overruling their objections to the sufficiency of the plaintiff's pleadings and his evidence. Their challenge to the sufficiency of the plaintiff's pleadings, by objection to the introduction of any evidence, was upon the ground that they did not state a cause of action nor entitle the plaintiff to the relief prayed for. In their brief they call our attention to the fact that the petition alleged that the plaintiff was merely in constructive possession of the lot in question. It is pointed out that, according to our decision in Morgan et al. v. McGee et al., 117 Okla. 212, 245 P. 888, "constructive" possession is insufficient to support a statutory action to quiet title, and that in order to state such a cause of action under section 466, C.O.S. 1921 (sec. 591, O. S. 1931), "actual" possession must be alleged. This argument overlooks the rule that "one who holds the legal title to land, though not in possession, may, independently of the statute, maintain a suit in equity to remove a cloud from the title to said land, when the same is not in actual possession of anyone." Levindale Lead & Zinc Mining Co. v. Fluke, 48 Okla. 480, 150 P. 481. While it is true that, in his petition, the plaintiff did not allege that the lot was "not in actual possession of anyone," the defendants' objection was not a specific challenge to the petition, but was directed merely to the "pleadings." An examination of the plaintiff's pleadings reveal that, in his reply, he alleged that the lot "is vacant, unoccupied and unimproved." We think that this allegation was sufficient to cure the alleged defect in the plaintiff's petition in view of the rule which governs the consideration of pleadings when challenged by an objection to the introduction of evidence. In First Nat. Bank v. Harkey, 63 Okla. 163, 163 P. 273, we said:

"An objection of this character * * * is not looked upon with favor by the courts, unless there is a total failure to allege some matters essential to the relief sought, and should seldom, if ever, be sustained, when the allegations are simply incomplete, indefinite, or conclusions of law, and the pleading will be liberally construed, if necessary, in order to sustain the same."

A further contention of the defendants seems to be that it was incumbent upon the plaintiff, in order to establish his cause of action, to allege and prove that he was a bona fide purchaser of the lot in question. The error in such a conception of the plaintiff's burden is apparent when it is remembered that the cause was brought merely as an action to quiet title. The question of the plaintiff's bona fides was injected into the controversy as an affirmative defense by the allegations of the answer. These allegations were denied in the plaintiff's reply, and it was, of course, not incumbent upon him as a part of his prima facie case to introduce evidence to refute them, until the cause came to trial and the defendants had introduced some evidence in support of them.

Another error assigned by the defendants is the action of the trial court in overruling their motion to strike that part of the plaintiff's reply asserting the invalidity of the tax resale deed that had been issued to their predecessor in title, the defendant M. McGrath. The grounds asserted for said motion were that it appeared that said deed had been of record for a period of twelve years and that any and all attacks upon the deed's validity was barred by the one-year period of limitation prescribed in chapter 158, S. L. 1923, as well as the two-year period prescribed by section 183, C.O.S. 1921 (sec. 99, O. S. 1931), and the "five-year statute of limita-

tions." The defendants attached the Mc-Grath resale deed to their answer and relied upon it in asserting their defense to the plaintiff's action. Thus the question of the validity of said deed could properly be raised as an issue in said cause by plaintiff's reply. The allegations therein contained asserting the deed's invalidity were not redundant or irrelevant matter, but were germane to said issue. For this reason, and the further reason that a motion to strike is not the proper pleading by which to assert the bar of limitations, the trial court committed no error in overruling the defendants' motion to strike the plaintiff's reply. See Berry v. Geiser Mfg. Co., 15 Okla. 364, 85 P. 699; Crump v. Lanham, 67 Okla. 33, 168 P. 43; and Bronson v. Reed, 167 Okla. 447, 30 P. 2d 459.

All of the defendants' remaining assignments of error pertain to the alleged erroneousness of the trial court's ultimate judgment in favor of the plaintiff. It is charged that said judgment is contrary, in several material respects, to the evidence as well as the law applicable thereto. In considering the contentions concerning this general specification, it is necessary to notice certain material facts concerning the chain of title to the lot in question.

It appears that the lot in question is vacant and unfenced. Both the plaintiff and defendants trace their alleged title to it from one Penelope J. Smith. While the lot belonged to the said Penelope J. Smith, the taxes due on same became delinquent, and as a result it was sold to the county at a tax sale and later resold to the defendant M. McGrath, as evidenced by a resale tax deed issued to him in June, 1924, and duly filed of record, December 1, 1925. Thereafter M. McGrath also purchased a quitclaim deed to said lot executed and delivered to him by Penelope J. Smith and her husband, E. C. Smith, on March 18, 1930. This deed was not filed of record, however, until after the present action was commenced. In the interim, the taxes on said lot for the year 1933 be-

came delinquent and a tax sale certificate therefor was issued, and thereafter, on January 6, 1937, assigned to one W. B. Downing. Ten days later the said W. B. Downing commenced proceedings to procure a tax deed by virtue of said certificate. There is some evidence tending to show that a tax deed was issued out of these proceedings, but the deed was not introduced in evidence, nor was any notice of the application for same shown to have been served upon the defendants. By reason of these things ·and the further fact that the plaintiff does not mention nor seem to rely upon such conveyance in his brief, but now seems rather to base his entire claim of title upon mesne conveyances from Penelope J. Smith, we will treat the issues herein as if no such deed had ever been in existence and will make no further mention of any right, title, or interest derived through the medium of such a deed. It further appears that on April 30, 1937, the said W. B. Downing commenced an action to quiet title to the lot in question against the same parties who are defendants in this action, but before service had been obtained on the defendants in said suit, he dismissed the same. It appears that before said action was dismissed, V. L. Downing, a brother of the said W. B. Downing, with knowledge of the pendency of said action, purchased a quitclaim deed executed to him as grantee on May 17, 1937, from Penelope J. Smith. It is undisputed that before this purchase, the said V. L. Downing was informed by Penelope Smith's husband, E. C. Smith, that he and his wife had sold the lot by an earlier quitclaim deed to M. McGrath. Soon after procuring said deed, V. L. Downing interested the plaintiff in the purchase of said lot without telling him of the outstanding unrecorded deed from the Smiths to M. McGrath. Downing's negotiations with the plaintiff resulted in a sale, and on June 18, 1937, he executed and delivered to him a quitclaim deed to the property. On the same day, both this deed and the one from Penelope Smith to V. L. Downing were recorded.

It was stipulated at the trial that a quitclaim deed to an undivided one-half interest in the lot was executed and delivered by M. McGrath to the defendant Clarence Kline on May 2, 1931. It does not appear when, if ever, this deed was recorded. M. McGrath's other one-half interest in the lot was conveyed to the defendant Joseph N. McGrath by a quitclaim deed dated April 4, 1935. Neither this deed nor the one from the Smiths to M. McGrath was recorded, however, until several months after this action was commenced.

From the foregoing history of the title to the lot in question, it will be observed that when the plaintiff acquired his deed to the same from V. L. Downing, as well as on the date he filed this action, his chain of title from Penelope J. Smith was complete with nothing derogatory thereto appearing of record except the tax resale deed issued to M. McGrath.

The major portion of the defendants' argument in support of their contention that the judgment is contrary to the evidence and the law applicable thereto concerns the validity of the quitclaim deed from V. L. Downing to the plaintiff. They assert that the evidence plainly shows that said deed is champertous under section 1939, O. S. 1931 (21 Okla. St. Ann. § 548). Under this statute, a deed to land executed and delivered by a grantor, where he or those through whom he claims have not been in possession of said land or taken the rents and profits thereof for a period of more than one year prior to said conveyance, is void as to those in adverse possession of said land. See Hill v. Moore, 46 Okla. 613, 149 P. 211; Sims v. Brown, 46 Okla. 767, 149 P. 876, and many others. In the present case it is not claimed that either the plaintiff or anyone through whom he claimed title had been in possession of or had collected any rents from the lot in question for a period of more than a year prior to his purchase of the property. It is urged on the plaintiff's behalf, however, that the conveyance or conveyances through which he claimed were not void as to the defendants because they were not in possession at the time of the plaintiff's purchase. In dealing with this issue, it is necessary to notice more of the evidence than we have hereinbefore related.

It appears that the lot adjoins a station of the Oklahoma City Fire Department. In 1934, Clifford Holloway, one of the firemen working at said station, having been given the name and address of the defendant Clarence Kline as the owner of the lot, wrote him a letter requesting on behalf of one E. J. McClure, another fireman at said station, the use of the lot for a garden. After Kline received the letter he forwarded it to his co-owner, M. McGrath, and the latter went to the fire station and verbally gave gratuitous consent to use of the lot for the purpose requested. It appears that the front portion of the lot was then used as a volley ball court and the rear for a garden plot. It further appears that its use as a garden was continued by various firemen of the station mentioned, during every summer from the year 1934, through and including the summer of 1937.

The plaintiff testified that in June, 1937, immediately before his purchase of the lot from V. L. Downing, he looked at the lot and found it "vacant."

The defendants do not contend that they ever received any cash rents and profits from the firemen's use of the lot, but they do assert that by reason of said use, they were in adverse possession of the same on the date of the acquisition of purported title thereto by the plaintiff. The plaintiff contends that the firemen's use of the lot is insufficient to constitute "occupancy" or "possession" by the defendants, as is contemplated by the champerty statute.

In beginning our consideration of the evidence in the present case, there are certain principles which should be kept in mind. One of these is that the defendants were charged with the burden of proving that they were in adverse

possession of the lot in question at the time of the plaintiff's purchase. See Courtney v. Worley, 181 Okla. 399, 74 P. 2d 370; Bilby v. Brockman, 55 Okla. 714, 155 P. 257, 259; Pond Creek Coal Co. v. Hatfield, 228 Ky. 806, 16 S. W. 2d 442. Also, two well-established rules governing appellate review must be remembered. One is that the judgment of the trial court is presumed to include a finding of every material fact necessary to support it; another is that such a judgment in an action of equitable cognizance will not be reversed on appeal unless it is against the clear weight of the evidence.

From our examination of the record, we cannot say that the judgment is against the clear weight of the evidence introduced on the issue of champerty. In our opinion the defendants failed to discharge their burden of proving their actual possession of the lot in June, 1937, when the deed from V. L. Downing to the plaintiff was executed and delivered. While there is authority for the defendants' contention that the possession of a tenant will accrue to the benefit of his landlord, yet the proof in the present case does not satisfactorily establish that there was anyone in actual possession of the premises as their tenants at the time when the alleged champertous deed was executed and delivered to the plaintiff. We are cognizant of section 10897, O. S. 1931, which provides that "any person in the possession of real property with the assent of the owner is presumed to be a tenant at will, unless the contrary is shown," but it was never shown that the firemen who were using the lot for a garden in 1937 ever had the permission of either Joseph N. McGrath or V. L. Downing, the defendants who claim to have owned the property at that time. The only express permission that ever seems to have been given for the use of any portion of the lot by anyone as a garden was given by M. McGrath upon a request made by the fireman, E. J. McClure. From all that appears in the evidence he was the only one of the firemen who had ever asked permission to use the lot. It does not appear that McClure was using the lot in 1937, but the undisputed testimony was that the firemen B. H. McGee, Bob Eaton, Pinkerton, and one or two others were the ones that were using it as a garden that year. As a tenancy at will is personal and therefore unassignable (Tiffany on Real Property, vol. 1, sec. 55, p. 140), and it was not established that the permission or consent which M. McGrath had granted the fireman McClure in 1934 had ever been extended to the firemen who were using it in the summer of 1937, we cannot say that a finding by the trial court that the latter group of firemen were not tenants of the defendants would have been against the clear weight of the evidence; especially is this true in view of the fact that it was never established that the particular defendants who then claimed to own the lot had any knowledge that those firemen were using it.

It is well settled that the evidence to establish adverse possession must be clear and positive. Farmers' National Bank of Oklahoma City v. Gillis, 155 Okla. 290, 9 P. 2d 47; Coats v. Riley, 154 Okla. 291, 7 P. 2d 644. It is equally well established that the possession must be "actual," but there is some variety of opinion as to what acts of dominion are sufficient to constitute "actual possession" of vacant lands under the champerty statutes of the various states. Thus, in Kash v. Lewis, 224 Ky. 679, 6 S. W. 2d 1098, it was held that the setting up and use of a "hot dog" stand on a vacant, unfenced lot was insufficient to constitute actual possession of the lot as contemplated by the champerty statute of Kentucky. The Supreme Court of the same state held in Abbott v. Perkinson, 144 Ky. 495, 139 S. W. 745, Ann. Cas. 1913A, 747, that it is not essential to the adverse possession of land that it be fenced, but that it is enough if it is merely cultivated. In D. S. B. Johnston Land Co. v. Mitchell, 29 N. D. 510, 151 N. W. 23, it was said:

"It is undisputed that the land was wild prairie land without a vestige of improvement, and at the most it is merely contended that plaintiff's possession thereof was constructive only and such as it would obtain by reason of the fact that on a few occasions it entered into leases with third persons, authorizing them to cut hay thereon. Such acts fall short of constituting actual, open, and notorious possession sufficient to set the champerty statute in motion."

In Mayes v. Kenton, 23 Ky. Law Rep. 1052, 64 S. W. 728, it was held:

"The possession of land by one person which will render void a sale and conveyance of the same land to another is such actual adverse occupancy contemporaneous with the deed sought to be avoided by it as to give notice in advance to the purchaser of the occupier's hostile claim: mere fugitive acts of ownership, exercised at intervals not being sufficient."

Undoubtedly what constitutes adverse possession is a mixed question of law and fact. Collier v. Bartlett, 71 Okla. 133, 175 P. 247. The law does not attempt to list all of the acts of dominion which may constitute such possession, so that what constitutes adverse possession, like the question of what constitutes negligence, often depends upon the circumstances of the particular case, as measured by the judgment of reasonable men. It has been said that such a determination in a given case must largely depend upon "the situation of the parties, the size and extent of the land and the purpose for which it is adapted. Johnston v. City of Albuquerque (N. M.) 72 P. 9, 11." 1 Words & Phrases (1st Series) p. 165. In the present case, regardless of whether it can be positively asserted that the trial court regarded the firemen's cultivation of a garden plot on the lot in question as sufficient to constitute actual possession of the whole lot, it is certain that he regarded such use as insufficient to put a prospective purchaser on notice that the defendants were in adverse possession of the same in June, 1937, for in rendering judgment he announced that the plaintiff was an inno-

cent purchaser. From our examination of the record, we cannot say that such a conclusion is contrary to the evidence.

The defendants, however, contend that the court's conclusion on this point was incorrect. They cite Miller v. J. I. Case Threshing Machine Co., 149 Okla. 281, 300 P. 399, and Lair v. Myers, 71 Okla. 175, 176 P. 225, to the general effect that a purchaser of land having notice that another claims an interest therein is charged with all knowledge which a diligent inquiry would have disclosed. In connection with this proposition of law, counsel for the defendants allude to the undisputed fact in the present case that the plaintiff knew of the existence of M. McGrath's resale tax deed at the time he purchased the lot in question. In view of the above authorities, counsel's position evidently is that this knowledge put him on notice of the defendants' claims to the property. The plaintiff, however, has taken the position that said deed was void on its face, and that "the recordation of a void deed does not affect the rights of a purchaser from the real owner," citing Prowant v. Smith, 77 Okla. 257, 188 P. 93. By way of rebuttal, the defendants' counsel quote Tittle v. Roberson, 143 Okla. 97, 287 P. 1011, and Jones v. Sharp, 183 Okla. 22, 79 P. 2d 585, to the effect that a defect in, or an absence of, recorded title in the persons in possession of property does not relieve purchasers from persons other than those in possession from ascertaining the extent of the claims to the property of those in possession of the same.

In our opinion, the above decisions do not apply to the defendants' position in the present case. By the trial court's judgment, it was in effect found that they were not in possession of the property at the time of the execution and delivery of the allegedly champertous deed. We have found that such a conclusion is not against the clear weight of the evidence. Assuming that the recorded tax resale deed issued to M. McGrath was sufficient to put the plaintiff on notice that there was an ad-

verse claim of title to the property, yet said deed could constitute no more than one element of adverse possession. Color of title is no substitute for, but supplements, possession. Proof that the plaintiff had notice of the McGrath tax resale deed, of course, did not cure the defendants' failure to prove that they were in possession of the lot described therein.

Another proposition presented in the defendants' brief is that the trial court erred "in holding void the resale tax deed issued to M. McGrath pursuant to the 1924 resale, and in not holding that all attack thereon was barred by the statute of limitation." An examination of the deed referred to shows that it contained the defect which the plaintiff by his reply asserted made said deed void on its face, namely; it contains no recital "that said lands were sold 'for the total amount of the taxes, interest, penalty and costs due' or in lieu thereof 'that said property was vacant lots within a city limit.' " There is no doubt but that such a defect renders such a deed void on its face. See Price v. Mahoney, 175 Okla. 355, 53 P. 2d 257; McGrath v. Majors, 179 Okla. 500, 66 P. 2d 915; Davis v. Harris, 180 Okla. 626, 71 P. 2d 616. We find nothing in the record to support counsel's assumption that the trial court held that all attack on the McGrath resale deed "was barred by the statute of limitations." Its order overruling the defendants' motion to strike cannot be considered such a "holding" in view of what we have already shown concerning the office of such a motion. This was the only manner in which the defendants attempted to assert the bar of any limitation period. Since the same was not an issue in the case, we will not consider the question of whether or not the plaintiff's attack on "the resale tax deed issued to M. McGrath pursuant to the 1924 resale" was barred by the expiration of any period of limitation.

Lastly, it is asserted, that the judgment of the trial court was erroneous because of the insufficiency of the plaintiff's tender of taxes, interest, penalties, and costs as required by section 12763, O. S. 1931 (68 Okla. St. Ann. § 455). While it is true that in the present case, the plaintiff did not make his tender until after the trial court had announced his decision in favor of the plaintiff, yet it is equally true that the question of tender was not raised until then. When the matter was finally called to the attention of the court by the attorney for the defendants, the opposing counsel orally tendered into court, on behalf of the plaintiff for the use and benefit of the defendants, the consideration paid for the McGrath tax resale deed, together with all taxes, penalties, and interest thereon that had been advanced by the defendants. The journal entry of judgment contains an order requiring the plaintiff to pay into court such expenditures of the defendants with interest thereon at the rate of 6 per cent. While we have held that "it is the duty of the trial court to require * * * the payment of the taxes, interest, penalties, costs, and expenses legally assessed against the land as a condition precedent to entering judgment in favor of the plaintiff" in an action to quiet title as against the tax deed holder (Meriwether v. Bowling, 184 Okla. 1, 84 P. 2d 1), yet we have also held that the timely tender into court of such amounts is purely a personal benefit, as it affects the substantial rights of the holder of the tax deed and may be waived by him. See Courtney v. Worley, 181 Okla. 399, 74 P. 2d 370, and Twyford v. Stephens, 183 Okla. 534, 83 P. 2d 578. If it be assumed here as it was in the Courtney Case that the provisions of sections 12761 and 12763, O. S. 1931 (68 Okla. St. Ann. § § 453, 455), relative to such tender are applicable, it is our opinion that, as the defendants in the present case failed to call the trial court's attention to the asserted requirement of tender and the plaintiff's failure to comply therewith until said court had orally announced its decision, they waived the necessity of an earlier tender by him. Under such circumstances, "the court has the authority" in entering its judgment "to require the land-

owner to reimburse the deed holder for taxes paid by him, with interest at the legal rate of 6 per cent. per annum." Courtney v. Worley, supra. Since this requirement was incorporated in the journal entry of judgment in the present case, we think that the court has sufficiently complied with its asserted duty in that respect, and so hold.

As we have found all of the propositions urged against the judgment insufficient to warrant a reversal thereof, the same is hereby affirmed.

WELCH, V. C. J., and CORN, HURST, and DANNER, JJ., concur.