## ANDERSON v. HILL.

No. 34477.  Dec. 11, 1951.

*239 P. 2d 1016.*

C. R. Thurlwell, Tulsa, for plaintiff in error.

Martin, Logan, Finney, Stanton & Moyers and Villard Martin, Jr., Tulsa, for defendant in error.

PER CURIAM. This is an action to quiet title to the following described vacant property situated in Tulsa county, Oklahoma, to wit:

"All that part of Block 20 of Terwilleger Heights Addition to Tulsa, Oklahoma, lying south of a line drawn east and west across said lot 15 feet south of the extreme north extremity thereof; . . ."

which action was commenced on February 3, 1948, in the district court of Tulsa county, Oklahoma, by J. H. Hill, plaintiff, against Cecil C. Anderson et al., defendants. We will continue reference to the parties as they appeared in the trial court.

The plaintiff claims title from C. H. Terwilleger, the record owner, by virtue of quitclaim deed dated October 25, 1946, but which, according to the evidence, was executed and delivered on September 30, 1946, and filed for record the same date. The defendant, Anderson, claims possession under a 1945 resale tax deed, claiming to have been in possession of the property since May 14, 1945, and further claims under a quitclaim deed from C. H. Terwilleger and Mary A. Terwilleger, his wife, dated June 10, 1948, and said defendant alleges that the deed from C. H. Terwilleger to the plaintiff, J. H. Hill, was champertous and void. The plaintiff, J. H. Hill, alleges that the resale tax deed to the defendant, Cecil C. Anderson, was void on its face, made tender of delinquent taxes, interest, penalty and costs, and further alleges that the land was vacant and not in the possession of either plaintiff or defendant. One of the defendants, Larkin Bailey, filed a disclaimer in the action. The trial court rendered judgment quieting title in the plaintiff as against the defendants, and from which judgment the defendant Cecil C. Anderson appeals. There were other defendants, but they do not appeal.

There are two issues made up by the pleadings and the evidence in this case:

(1) Whether or not the resale tax deed was valid as issued to the defendant, Cecil C. Anderson.

(2) Whether or not the plaintiff's deed from C. H. Terwilleger was champertous.

the last of which, in our opinion, is the main issue presented.

In considering the first issue, or proposition, the trial court held the resale tax deed void on its face and ordered the same canceled, because of inadequacy of description of the premises therein, and for the further reason that the last quarterly installment of the taxes for the year 1944, which was included in the taxes for which the property was sold on May 14, 1945, was not delinquent at the time of the first publication of the notice of resale.

With reference to the sufficiency of the description of the property, the same was described as "S Pt" of Block 20, on the assessment roll, in the tax sale proceedings and in the tax deed, as stipulated by the parties to the action.

The case of Parkes v. Crawford, 196 Okla. 613, 167 P. 2d 356, involves land described in the notice of sale as "Part SW NE Sec. 33-5-17 Maude Blake sold 117132-years 1931-1938, total due $48.-97". In the resale tax deed the property was described as "Balance of South part of Southwest Quarter (SW¼) of the Northeast Quarter (NE¼) of Section Thirty-three (33) in Township Five (5) North of Range Seventeen (17) E. C.M., Texas County, Oklahoma". That case held the description of the land in both the notice of resale and resale tax deed fatally defective and the tax deed, therefore, void.

The general rule, as set forth in Parkes v. Crawford, supra, is that where a tax deed attempts to convey a portion of a tract of land or of a lot, it must be so particularly described that it can be definitely and certainly located within the boundaries of the larger tract. See, also, Watts v. Meriwether, 184 Okla. 32, 84 P. 2d 643. In the instant case, we think the court rightly held the tax deed void for lack of definite and adequate description of the property involved.

The record reflects that the last quarterly installment of the 1944 taxes was not due and delinquent until May 1, 1945; that the said last quarterly installment was included in the taxes for which the property was later sold on May 14, 1945; that the notice of the 1945 tax resale was first published on April 13, 1945.

It is generally held that, where notice of resale of lands for nonpayment of taxes included last quarterly installment of taxes for current year, which installment was not delinquent at time of first publication of such notice, the resale tax deed and title based thereon are void. This is the holding in Carman v. McMahan, 198 Okla. 367, 178 P. 2d 626, and cases cited therein, and which we think applies to the instant case.

For the above reasons, we therefore hold that the trial court rightly held the tax deed void and ordered the same canceled.

In considering the evidence in this case, we should remember that the defendant has the burden of proving that he was in adverse possession of the property in question at the time of the execution and delivery of the deed from Terwilleger to the plaintiff, J. H. Hill. See McGrath v. Eichoff, 187 Okla. 64, 100 P. 2d 880, and cases cited therein. As stated also in the case of McGrath v. Eichoff, supra, there are also two well established rules governing appellate review:

(1) That the judgment of the trial court is presumed to include a finding of every material fact necessary to support it; and,

(2) That such a judgment in an action of equitable cognizance will not be reversed on appeal, unless it is against the clear weight of the evidence.

The evidence in this case as presented by the defendant is to the effect that he went into possession of the property on May 14, 1945, and was thereafter in possession up to and including the time of execution and delivery of the deed from C. H. Terwilleger to the plaintiff, J. H. Hill, and in his brief he states that, whether the tax deed "is valid, void or voidable, he did take possession of the property. He permitted others to use it, he paid the taxes thereon, and he had the weeds and grass cut from time to time thereon", citing the case of Miles v. Pressley, 198 Okla. 124, 176 P. 2d 473, and Davis v. Manhard, 172 Okla. 85, 45 P. 2d 1095. Both of these last mentioned cases hold that a deed of real property by a grantor out of possession, where neither such grantor nor those under whom he claims have been in possession of such real property or received the rents and profits therefrom, for more than one year next preceding the date of the deed, is champertous and void as against any person or persons in adverse possession. However, the case of Davis v. Manhard, supra, goes a step further and defines adverse possession as follows:

" 'Adverse possession' means open, continuous, and exclusive possession with claim of ownership, such as will notify parties seeking information on subject that premises are not held in subordination to any title or claim of others, but against all titles and claimants."

The cases generally hold that those seeking to avoid a deed as champertous have the burden of proving that they were in actual possession of the land adversely to the grantor and those under whom he claims. See McGrath v. Eichoff, supra.

In Davis v. Phelan, 189 Okla. 704, 119 P. 2d 1015, there was evidence of the gardening of the vacant lot in question, planting to small grain over a period of seasons by lessee of one claiming adversely to the present owner, but the court in that case held the evidence insufficient to constitute actual possession under the champerty statute, where there was no visible evidence of present cultivation at the time of the execution and delivery of the alleged champertous deed.

The evidence of the plaintiff in that case was to the effect that no one was in actual possession of the property at the time he secured the deed from the record owner, C. H. Terwilleger; that the city had cut weeds on the property, both prior and subsequent to the execution and delivery of his deed, had placed "no parking" signs on the property for the reason that cars parked thereon prevented the mowing of the grass on the property; that he never at any time had knowledge of anyone, other than the city, cutting weeds on the property, and that he never "saw anybody but city employees because all I saw mowing came in with city equipment and mowed the lawn" (C. M.69). The case of Davis v. Phelan, supra, further holds:

"While one who purchases land from the record owner must take notice at his peril of all adverse claims of which he has knowledge, he need not, in order to save his deed from champerty, look beyond the actual possession of the premises, at the time he receives his conveyance. A claim of possession, no matter how loud and long it may be and continue, or whose ears it may reach, will not amount to possession, but it may warn a purchaser of some color of title or actual interest that would prove superior to or a burden upon the title he expected to receive."

and, in the case of McGrath v. Eichoff, supra, on page 886, the court said:

"Assuming that the recorded tax resale deed issued to M. McGrath was sufficient to put the plaintiff on notice that there was an adverse claim of title to the property, yet said deed could constitute no more than one element of adverse possession. Color of title is no substitute for but supplements possession. Proof that the plaintiff had notice of the McGrath tax resale deed, of course, did not cure the defendants' failure to prove that they were in possession of the lot described therein."

Even though the evidence in the instant case reflects that plaintiff had notice of Anderson's resale tax deed, we think the defendant has failed in his proof that he was in actual possession of the property in question at the time of the execution and delivery of the Terwilleger deed to plaintiff, adversely to the grantor, C. H. Terwilleger, and those claiming under him, and the trial court so found.

The case of McGrath v. Eichoff, supra, further states:

"Undoubtedly what constitutes adverse possession is a mixed question of law and fact. Collier v. Bartlett, 71 Okla. 133, 175 P. 247. The law does not attempt to list all of the acts of dominion which may constitute such possession, so that what constitutes adverse possession, like the question of what constitutes negligence, often depends upon the circumstances of the particular case, as measured by the judgment of reasonable men. It has been said that such a determination in a given case must largely depend upon 'the situation of the parties, the size and extent of the land, and the purpose for which it is adapted. Johnston v. City of Albuquerque, (12 N.M. 20), 72 P. 9, 11.' 1 Words & Phrases, First Series p. 165. In the present case, regardless of whether it can be positively asserted that the trial court regarded the firemen's cultivation of a garden plot on the lot in question as sufficient to constitute actual possession of the whole lot, it is certain that he regarded such use as insufficient to put a prospective purchaser on notice that the defendants were in adverse possession of the same in June, 1937, for in rendering judgment, he announced that the plaintiff was an innocent purchaser."

The trial court considered the evidence of the defendant, Cecil C. Ander-

son, as insufficient to constitute actual possession, so as to make the deed from Terwilleger to the plaintiff, J. H. Hill, champertous.

We hold that the judgment of the trial court is not clearly against the weight of the evidence, and said judgment of the trial court is hereby affirmed.

This court acknowledges the services of Attorneys Clyde E. Robinson, E. Blumhagen, and Ted R. Fisher, who as Special Masters aided in the preparation of this opinion. These attorneys were recommended by the Oklahoma Bar Association, approved by the Judicial Council, and appointed by the Court.

HALLEY, V.C.J., and WELCH, CORN, GIBSON, DAVISON, JOHNSON, O'NEAL, and BINGAMAN, JJ., concur.