1998 OK CIV APP 183

**WHOLESALE PETROLEUM COMPANY, an Oklahoma Corporation, Plaintiff/Appellee,**

v.

**Mary Sue CHARTIN and Angel Chartin, Defendants/Appellants.**

**No. 90,180.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Nov. 18, 1998.

---

James W. Rusher, Heath E. Hardcastle, Tulsa, for Appellants.

Sam T. Allen, IV, Sapulpa, for Appellee.

## MEMORANDUM OPINION

Opinion by CAROL M. HANSEN, J.

¶1 Appellants, Mary Sue Chartin and Angel Chartin (Chartins), seek review of the trial court's judgment quieting title to certain real property in Appellee, Wholesale Petroleum Company (Wholesale). The trial court correctly held a resale tax deed issued to Chartins was void for lack of proper notice and we affirm.

¶2 The facts are not in controversy. The real property in contention, Lot 32, Block 5, Burnett's Refinery Addition to the City of Sapulpa, was first acquired by Wholesale in 1974. Lot 32 is in the middle of eight other lots which Wholesale acquired at the same time. In 1978, Wholesale inadvertently failed to convey Lot 32 when it conveyed the remaining lots to Pure Gold Investments (Pure Gold). Wholesale believed Lot 32 had been conveyed with the eight other lots.

¶3 Carl and Betty Rivers were stockholders in both Wholesale and Pure Gold. Wholesale was a Rivers family corporation. The Rivers were stockholders in Pure Gold with another couple. Wholesale was in gasoline marketing and Pure Gold was in real estate investing. The corporations were not interrelated. They did have a common mailing address at all relevant times, although the address was not exclusive for Pure Gold. Betty Rivers worked "some" for Wholesale, but had little active involvement with Pure Gold. Pure Gold was suspended from doing business in February 1986, and did no busi-

ness after that time. Wholesale remains an active business.

¶ 4 In 1985, Pure Gold conveyed the lots surrounding Lot 32 to Bethesda Boys Ranch. Carl and Betty Rivers acquired these lots when they went into foreclosure. The Rivers made improvements on the lots, and all, including Lot 32, were used for commercial purposes. From 1974 forward, Wholesale remained the record owner of Lot 32 in the Creek County Clerk's office. However, for reasons unexplained by the record, Pure Gold was shown as the owner of Lot 32 in the County Treasurer's office.

¶ 5 In July 1989, the County Treasurer sent a notice of delinquent taxes to Pure Gold, c/o Wholesale, at the common mailing address. Betty Rivers signed the registered mail receipt. The tax notice identified the property as "Burnett Ref. Block 5 Lot 32", and advised the property would be sold at the October 1989 tax sale if taxes were not paid. In May 1992, the County Treasurer sent a tax statement to Pure Gold, addressed the same as the 1989 notice. Betty Rivers also signed the receipt for this statement.

¶ 6 The 1992 statement showed taxes owing for years 1989–1991. The handwritten statement identified the property just as the 1989 notice had. There was nothing regarding sale or resale of the property in the 1992 statement. The County Treasurer also listed the property when she published notice of resale of real estate for delinquent taxes in May and June 1992. Pure Gold was listed as owner in the publication with no mention of Wholesale. Chartins bought the property at the tax sale on June 8, 1992, and were issued a resale deed. Chartins paid the taxes from 1989 forward. In 1996, the Rivers entered into a contract to sell the entire property. Because of the facts which eventually led to this action, sale of Lot 32 was still "pending" at the time of trial.

¶ 7 This action was tried to the court. The trial court concluded Wholesale "was not afforded notice reasonably calculated, under all the circumstances, to apprise it of the sale of Lot 32 for delinquent taxes and the subsequent resale thereof." The court held the tax deed issued to Chartins was "null, void and of no force or effect", and quieted title in

Wholesale. The court awarded Chartins judgment against Wholesale for the taxes paid plus interest. Chartins appeal the trial court's judgment.

¶ 8 On appeal, Chartins contend the trial court erred in finding the notice given Wholesale was not reasonably calculated to apprise it of the tax resale. This action is one to quiet title, which is equitable in nature. *Carlile v. Carlile*, 1992 OK 57, 830 P.2d 1369. In such cases, we will not disturb the trial court's judgment unless it is clearly against the weight of the evidence. *Id.* at 1371.

¶ 9 Chartins essentially argue the County Treasurer's *substantial compliance* with the statutory requirements for the tax resale of Lot 32 was legally sufficient. While there is some authority to that effect, *e.g., King v. Slepka*, 194 Okla. 11, 146 P.2d 1002 (1944), the focus of our inquiry here is not substantial compliance with statutory procedures, but rather, whether the notice satisfies the elementary and fundamental requirement of due process. *Luster v. Bank of Chelsea*, 1986 OK 74, 730 P.2d 506.

¶ 10 In *Luster*, the County Treasurer inadvertently changed his records so the tax rolls showed a stranger to the title as owner. The erroneous change was made after proper publication of delinquent taxes showing the correct owner. The notice of *resale* publication showed the wrong person as owner, and the personal notice by certified mail was also sent to the person improperly noted as owner on the tax rolls. The real owner testified she never received notice and assumed the mortgage holder was making tax payments and was unaware of delinquent taxes until receiving the summons in the quiet title action.

¶ 11 The *Luster* Court held the owner and mortgagee had constitutionally protected property interests which were violated when the County Treasurer unconstitutionally exercised jurisdiction of the original sale and resale. The tax resale deed holder in *Luster* argued the trial court correctly found that all matters pertaining to the tax certificates and sale at tax resale were in compliance with the statutes. The Supreme Court found such compliance was not determinative, holding:

It is the totality of the circumstances and conditions of each individual case that determines if the constitutional requirements of due process are satisfied.

¶ 12 Chartins assert *Luster* is distinguishable because notice was sent to a stranger to the title there, while here, notice was concededly received by Betty Rivers, who had an association with both the true owner and the purported owned incorrectly shown on the tax rolls. We find however, failure of notice in this case is nonetheless fatally deficient under *Luster.* As the Court noted there:

> The pivotal question presented by this case is whether Mrs. Thomas and the Bank were afforded adequate notice reasonably calculated, *under all the circumstances,* to apprise them of the sale of the subject property for delinquent taxes and the subsequent resale thereof. (Emphasis added).

¶ 13 Under *Luster,* each case must be determined on its own facts. The trial court here concluded notice was inadequate under the *Luster* standard because Pure Gold was improperly listed as property owner and had gone out of business several years before the resale. We hold the notice was inadequate, but for a different reason. We need not address the trial court's reasoning. We will affirm the trial court's judgment when it reaches the correct decision, even if for the wrong reasons. *Unit Petroleum Co. v. Nuex Corp.,* 1991 OK 21, 807 P.2d 251.

¶ 14 Accepting, *arguendo,* Betty Rivers could have received notice for Wholesale under the facts here, the notice of resale was nonetheless fatally deficient. The requirements for notice of resale are set forth in 68 O.S.1991 § 3127. In addition to notice by publication, § 3127 directs, "[t]he county treasurer shall, at least thirty (30) days prior to such resale of real estate, give notice by certified mail, by mailing ... *a notice stating the time and place of said resale* ...". (Emphasis added). There is no notice in the record which meets this requirement.

¶ 15 As we noted above in setting forth the facts, the May 1, 1992, Tax Statement sent by the County Treasurer to Pure Gold made no mention of sale or resale. The

Tax Statement is very similar to a Delinquent Tax Statement which was controverted in *Federal Land Bank of Wichita v. American Bank & Trust Co.,* 1991 OK 91, 823 P.2d 359. However, the printed tax statement in that case did contain a typewritten note stating the property would be advertised and sold, with the time and place included. The Supreme Court nevertheless found such notice to a mortgagee was fatally defective because it did not include the term *resale* as mandated by § 3127. In the matter now before us, there was not even a hint the property would be resold, much less the time and place of resale. The purpose of notice is to warn the owner his property is to be sold so that he or she can prevent the sale by paying taxes, and inadequate notice under these circumstances is tantamount to *no notice. Id,* at 362.

¶ 16 Notice is a jurisdictional requirement, primary and fundamental in every case. *Luster,* 730 P.2d at 508. The tax resale deed issued to Chartins is void for lack of jurisdiction of the County Treasurer to make resale of Lot 32. Although a tax deed may be valid on its face, where a county treasurer is without jurisdiction to sell or resell the property, the tax deed is void and the taxpayer is not barred from attacking the deed by any statute of limitations, including that set out in 68 O.S.1991 § 3141. *Terwilleger v. Bridges,* 192 Okla. 642, 138 P.2d 79 (1942).

¶ 17 Lastly, Chartins contend the trial court's judgment should be reversed because Wholesale "failed to tender the taxes, interest and penalties as required." Such tender is provided for in 68 O.S.1991 § 3140, as follows:

> To defeat the deed, the person desiring to set the same aside ..., ... must, tender in open court for the use of the holder of the tax deed, all taxes, penalties, interests and costs, ...

¶ 18 The tender provided in § 3140 "is purely a personal benefit as it affects the substantial rights of the holder of the tax deed and may be waived by him." *McGrath v. Eichoff,* 187 Okla. 64, 100 P.2d 880 (1940). In *McGrath,* the plaintiff, who was asking

the court to set aside the tax deed, did not make his tender until after the court had announced its decision in his favor. However, the Supreme Court found the party holding the tax deed had waived the necessity of an earlier tender because the requirement had not been brought to the trial court's attention until after the decision. When the requirement was raised, the plaintiff orally tendered into court the consideration paid for the tax deed, plus taxes, penalties and interest advanced by the defendants.

¶ 19 Contrary to Chartins' contention, what happened here is substantially the same as in *McGrath.* Chartins did not raise the issue of tender until trial. When Chartins did raise the issue, Wholesale objected to Chartins' assertion as an untimely affirmative defense, but further did tender payment to Chartins. The trial court awarded Chartins judgment for the taxes they had paid, plus interest. Wholesale did not appeal that judgment and it is final. Under the circumstances, we find no reversible error with respect to the issue of tender.

¶ 20 The judgment of the trial court is not clearly against the weight of the evidence and is AFFIRMED.

ADAMS, J., and BUETTNER, P.J., concur.