CITY OF HENRYETTA v. ROSE LAWN DAIRY et al.

No. 34619.   Jan. 8, 1952.

*239 P. 2d 774.*

Carland Smith, Okmulgee, and Koch & Woodliff and F. C. Helm, Henryetta, for plaintiff in error.

Allen G. Nichols, Wewoka, and Steele & Boatman, Okmulgee, for defendants in error.

O'NEAL, J.   The parties to this cause will be referred to as they appeared in the trial court, Rose Lawn Dairy, plaintiff, and the city of Henryetta, Oklahoma, defendant.

The Rose Lawn Dairy, a copartnership, filed its complaint to enjoin the enforcement of ordinance No. 453 enacted by the city of Henryetta. Before final hearing ordinance No. 453 was amended by ordinance No. 462, which latter ordinance was again amended by ordinance No. 465. The principal amendments applied to section 3 of the original ordinance.   The judgment below held the amendment void for the reasons hereinafter considered in more detail. The city of Henryetta has appealed on questions of law reserved. Its attorneys argue that section 3 of ordinance No. 453 as amended by ordinances 462 and 465, is a reasonable and proper exercise of its delegated police power and is valid. Attorneys for plaintiff (defendant in error) say, "No", and the trial court says, "No".

Sec. 3 of the original ordinance No. 453 provided:

"It shall be unlawful for any person to bring into or receive into the city of Henryetta, Oklahoma, or its police jurisdiction, for sale, or to sell, or offer for sale, therein, or to have in storage where milk or milk products are sold or served, any milk or milk product defined in this ordinance, who does not possess a permit from the health officer of the city of Henryetta, Oklahoma."

While ordinance No. 453 was in effect, Dr. M. L. Peters, health officer of the city of Henryetta, advised plaintiff, by letter, that it had met the requirements of the health department and was eligible for a permit to sell Grade A milk in the city. When plaintiff appeared and requested the milk permit, it was advised that standard ordinance No. 453 had just been amended by city ordinance No. 462, the amendment applying to section 3 of the original ordinance, and which amendment increased the fees as applied to

dairy herds, or producers located more than twelve miles from the city limits of Henryetta. During the pendency of the present action ordinance No. 462 was again amended by the city council, the amendment again going to the provisions under which certain license fees and inspection fees were required to be paid by the applicant for a permit as a prerequisite to selling milk within the city limits of Henryetta. Plaintiff contends these fees and charges are exorbitant, unreasonable, and so prohibitive as to force it out of doing business in the defendant city. On the contrary, defendant contends the fees and charges are reasonable and are necessary to defray reasonable inspections and are authorized under the police powers vested in cities to protect the health and public welfare of its citizens.

It is pertinent to note that during the pendency of this action, the State Legislature (1949) passed comprehensive legislation with reference to dairying and dairying inspections. This act, however, states the legislative policy as follows:

"This Act shall not prevent cities and towns from fixing as high, or higher, standards of fluid market milk than those fixed by the Act."

Sec. 3, sub. (f) of the ordinance of the city of Henryetta, provides:

"Each milk processing plant, or the operator thereof, desiring a permit and license for the sale in said city of all or any portion of its milk or milk products shall file with the City Clerk of said City written application therefor, in triplicate, directed to the Mayor of said City setting forth in said application the location of each such processing plant at which there is to be processed all or any part of the milk or milk products which the applicant expects to sell or offer for sale in said City, and the location of each milk gathering point or plant where all or any part of the milk to be offered for sale in said City is to be gathered or collected; together with a description or intelligent explanation of the type of vehicles to be used in the transportation of all or any part of the milk or milk products to be offered for sale in said City. Such last-mentioned application shall also set forth the following information as to the applicant's source of supply for all or any part of the milk or milk products to be offered by it for sale in said City:

"The name and address of each milk producer or operator of a dairy or dairy farm and the name and location of any other source of supply;

"The location of each such dairy or dairy farm and the name and location of any other source of supply; and

"The number and type of dairy animals on each such dairy or dairy farm.

"Each such last-mentioned application shall be accompanied by a cash deposit sufficient to include the annual charge for such last-mentioned permit and license according to the following schedule: A fee of One Hundred ($100.00) Dollars for each processing plant described in such application to be for inspection thereof during a one-year period by the Health Officer; and in addition to said One Hundred ($100.00) Dollar fee, the sum of six (6c) cents per mile each way for twelve (12) inspection trips by the Health Officer, excluding from such mileage the distance within a radius of twelve (12) miles of the limits of said City; and in addition thereto, an amount of money sufficient to include the aggregate amount of permit and license fees, as provided for in Paragraph (c) hereinabove for each milk producer, dairy or dairy farm constituting the source of all or any part of the milk or milk products which may be offered for sale by the applicant in said City, only excluding therefrom each such milk producer, dairy or dairy farm as then holds valid permit and license for the sale of its milk in said City. All funds so received by the City Clerk shall be by him forthwith delivered and turned over unto the City Treasurer of said City."

It will be noted that under section 3 (f), an applicant for a permit to sell

milk in the city of Henryetta must comply with the provision that:

" . . . and in addition thereto an amount of money sufficient to include the aggregate amount of permit and license fees as provided for in Sec. 3 (c) of the city ordinance."

Section 3 (c), referred to, requires each producer or operator of a dairy farm, who desires any or all of its milk to be sold in Henryetta, to obtain a license from the city. The application for license must show the number and type of the dairy animals at each dairy, and each producer or operator of the dairy is required to pay an annual license fee of $10 and, if located within twelve miles of the city, an additional sum of 6c per mile each way as an inspection fee. The record does not disclose any substantial controversy on the facts involved in the litigation.

The plaintiff has a modern, up-to-date pasteurizing plant located in the city of Muskogee. It purchases large quantities of fluid milk within a territory comprising the counties of Muskogee, Adair, Wagoner, Sequoyah, Choctaw, and Seminole within the state, and in addition, a quantity of milk at a point in southwestern Missouri and in western Arkansas. This milk is pasteurized at its plant and is sold in numerous cities and towns in eastern Oklahoma. The state maintains a branch office of its State Health Department at Muskogee, and the city of Muskogee maintains a city-county health department which is under the supervision and management of a Doctor Hackler, a physician with a degree of Master of Health from John Hopkins. The milk purchased by plaintiff in the so-called Muskogee shed (the counties and states referred to) is processed in plaintiff's pasteurization plant. Inspectors of the State Health Department and the Muskogee city-county health department periodically inspect the dairy herds of the producers and conduct laboratory tests of the milk so purchased, at the joint laboratories of the respective health departments. In fact, the laboratory maintained by the Muskogee health unit is a branch laboratory of the State Health Department.

Doctor Peters of the Health Department of the city of Henryetta, a physician and also the holder of a Master of Health degree from John Hopkins, testified to the eminent qualifications of the officers and employees of the State Health Department and Muskogee city-county health department, and characterized the departments as "an efficient health department." It is not in dispute that the producers of milk and this processor within the Muskogee milk shed received a rating of 93% by the federal, state, and county authorities of their respective health departments, as of June, 1949, and it is conceded that a rating of 90% is considered by the federal, state, and county health departments as a satisfactory rating.

Plaintiff's contention, and it is not controverted, is that a compliance with section 3 (c) and 3 (f) of ordinance No. 465 will exact fees and expenses in the approximate sum of $7,000, which the ordinance requires to be paid as a condition precedent to obtaining a license to sell milk within the city limits of the defendant city. It is further without controversial dispute that plaintiff has complied with all requirements and regulations of the State Health Department and the Muskogee city-county health department governing the purchasing and processing of fluid milk.

As the legislative act (1949) does not prohibit cities and towns from fixing higher standards for fluid milk than those fixed by the legislative act, therefore, in the absence of positive evidence to the contrary, such ordinance must be presumed to be reasonable.

The defendant city admits that the milk obtained by plaintiff from its producers, dairies and dairy farms in the Muskogee shed and the method of its treatment in defendant's pasteurization

plant meet every requirement under federal and state law, and the requirements, rules and regulations of the State Health Department and the Muskogee city-county health department. The ordinance here involved does not require the city health department of the defendant city to establish a higher standard for fluid milk than those fixed by the legislative act referred to. Nor is it asserted by the health department that a higher standard should be imposed, and it is conceded by the defendant city that the standard of milk offered for sale by plaintiff has a high standard of purity and excellence.

When plaintiff made application for a permit and license to sell milk in Henryetta, it made an offer to pay the license fee and inspection fee imposed under section 3(f) of the ordinance, but declined and refused to pay the license fees and inspection fees imposed under section 3(c) of the ordinance. This offer was renewed upon the trial. The fees so tendered in the sum of $100 were imposed on a processor of milk offering to sell milk within the defendant city, and the sum of $80 covered inspection fees equal to 6c a mile each way for twelve inspection trips by the health officers of said city. Plaintiff refused to file with the city clerk a statement as provided by section 3(f) as follows:

(a) The location of each dairy herd where the milk or any part thereof was produced in the various counties heretofore referred to;

(b) A statement showing the number and type of dairy animals at each dairy or dairy farm;

(c) To comply with a demand of the city clerk to deposit with him the sum of $10 for each dairy or dairy farm within 10 miles of the city for every herd of 20 cows or less;

(d) To deposit with the city clerk an additional sum of 50c a head for all cows in herds in excess of 20 head;

(e) To deposit an additional sum of money estimated at 6c per mile for each mile traveled beyond the twelve mile limit to cover inspection fees.

Although the plaintiff here is a processor of milk and not a producer, or operator of a dairy farm, nonetheless, this ordinance requires that as a processor and as a condition to granting the license or permit to sell its milk in the city of Henryetta, it must deposit with the city clerk a sum of money sufficient to include the aggregate amount of permit and license fees imposed on producers of milk as provided for in section 3(c) of the ordinance. The unreasonable, arbitrary, capricious and discriminatory feature of the ordinance, as we view it, is the requirement of the processor to deposit an additional sum of money covering permit and license fees of approximately 260 of its milk producers, dairies and dairy farms constituting the source of all, or any part, of the milk gathered by the processor and offered for sale by it within the city of Henryetta, only excluding therefrom such producers, dairies, or dairy farms who then hold a valid permit and license for the sale of its milk within the city.

That plaintiff should be compelled to pay license fees and inspection fees of the producers where these producers have not procured permits from the defendant city, is an exaction that cannot be sustained as a reasonable regulation under the police powers vested in the city. The inequities of the ordinance are illustrated by the circumstance that a processor of milk in Henryetta who is fortunate in procuring his milk supply from a single producer having a sufficient supply of milk to meet all of the processor's requirements will at most be required to pay only the one producer's license fee and inspection fee, while the second processor of milk in Henryetta, who may be compelled to procure his milk supply from numerous producers in widely scattered areas to meet his requirements, is compelled to pay all the

producer's license and inspection fees as a condition to obtaining a permit to sell the milk within the city of Henryetta. It is conceded that milk business is affected with public interest, and is subject to regulation, but regulation must be reasonable and cannot be arbitrary or discriminatory, and its reasonableness depends on the facts of each case.

In City of Wewoka v. Rose Lawn Dairy, 202 Okla. 286, 212 P. 2d 1056, we held:

"Milk business is affected with public interest and is subject to regulation but regulation must be reasonable and cannot be arbitrary, capricious or discriminatory, and reasonableness depends on facts."

All cases cited in briefs, both federal and state, uniformly hold that milk is not only a necessary article of food, but is a lawful subject to commence; that it may not be excluded from the ordinary current of trade and commerce, either interstate or intrastate, and that in each case the important question is the reasonableness of the regulation as a public measure in the interest of public health. It is true that debatable questions as to the reasonableness of the ordinance are not questions of justiciable determination, but are to be decided by the legislative branch of the city. But where the ordinance, under facts as here disclosed, will impose unreasonable and discriminatory exactions as a condition precedent to engaging in a lawful business, it will be held unlawful and void.

The trial court properly held the provisions of section 3(f) of ordinance No. 465 of the city of Henryetta providing:

" . . . and in addition thereto, an amount of money sufficient to include the aggregate amount of premit and license fees, as provided for in Paragraph (c) hereinabove for each milk producer, dairy or dairy farm constituting the source of all or any part of the milk or milk products which may be offered for sale by the applicant in said City, only excluding therefrom each such milk producer, dairy or dairy farm as then holds valid permit and license for the sale of its milk in said City."

are unreasonable and discriminatory as applied to plaintiff and are therefore invalid.

The judgment of the lower court is affirmed.

HALLEY, V. C. J., and CORN, DAVISON, JOHNSON, and BINGAMAN, JJ., concur.