**BEATRICE FOODS COMPANY, a Corporation, Plaintiff in Error,**

v.

**CITY OF OKMULGEE, Oklahoma, a Municipal Corporation, et al., Defendants in Error.**

No. 39592.

Supreme Court of Oklahoma.

Feb. 26, 1963.

As Amended on Denial of Rehearing
May 13, 1963.

D. F. Rainey, Boatman, Pugsley & Boatman, Smith, Inglish & Gray, Okmulgee, for defendants in error.

Campbell & Campbell, Tulsa, Hays & Beidleman, Okmulgee, for plaintiffs in error.

JACKSON, Justice.

In 1954, the city of Okmulgee adopted a comprehensive milk control ordinance. The large majority of its technical provisions were substantially the same as, or identical with, the provisions of 63 O.S. 1961 §§ 295.1 through 295.11. However, there were some provisions, to be hereinafter noted, which were different.

In May, 1960, plaintiff, Beatrice Foods Company, a milk processor with a plant in Tulsa, formally made application to the city of Okmulgee for a license to sell milk and milk products. In the application, it furnished all information required by the ordinance except (1) the location of each

dairy farm selling milk to Beatrice; (2) the number and type of dairy animals on each such farm; and (3) written consent by the owner of each such farm authorizing Okmulgee inspectors to enter upon the premises to make inspections. Also, Beatrice did not tender certain inspection fees required by the ordinance.

A few days thereafter, the city manager of Okmulgee wrote Beatrice requesting the information and fees it had failed to submit, and saying that no further action would be taken on the application until such were received.

In August, 1960, Beatrice applied to the district court for a writ of mandamus to compel the issuance of the license. It alleged, among other things, that its milk and milk products were processed, distributed and sold under the most modern and sanitary conditions; that its plant and products consistently received high ratings from federal, state and Tulsa authorities; that for many years they had been approved for a Grade A labeling by the State Health Department. It further alleged that Beatrice purchases milk from some 375 farmers and dairies in northern Oklahoma, northwestern Arkansas, and southwestern Missouri, all of which are subject to inspection by federal, state and Tulsa officials, for the enforcement of substantially the same standards as those prescribed by the Okmulgee ordinance, and that further inspection by Okmulgee authorities according to the fee schedule prescribed by the ordinance would cost about $40,000 per year, and would be an unreasonable and unnecessary duplication of the other inspections.

After extensive hearings at which expert testimony was introduced, the trial court entered judgment for defendants and refused to issue the writ. Beatrice Food Company appeals and here argues two propositions, to be hereinafter noted.

■ It is conceded that a municipality has the right, under 63 O.S.1961 § 295.6, subd. D, to prescribe higher standards for milk and milk products, sold therein, with respect to sanitation and nutrition, than the state law.

■ It is likewise conceded that municipal milk regulations must be reasonable and cannot be arbitrary, capricious or discriminatory. City of Wewoka v. Rose Lawn Dairy, 202 Okl. 286, 212 P.2d 1056; City of Henryetta v. Rose Lawn Dairy, 205 Okl. 590, 239 P.2d 774.

We are of the opinion that our decision in this case must be governed largely by the provisions of the 5th grammatical paragraph of 63 O.S.1961 § 295.6, subd. D. This paragraph of the statute was enacted in 1953, after the decisions in the two cases above cited. It provides in substance that when the State Commissioner of Health has approved the use of a Grade A label on milk or milk products in accordance with the statute, such rating is sufficient *for all intra-state purposes.* It further provides that *except* as to any city or town "having and enforcing an ordinance with any reasonable sanitation and nutritional standards which are higher than those provided herein, and upon payment of any reasonable license or inspection fees" it shall be unlawful for a municipality to refuse a permit for, or otherwise prohibit the distribution and sale of, properly labeled Grade A milk or milk products.

■ It is not argued that this section of the statute is ambiguous, or its meaning doubtful. By its provisions, a municipality plainly has the right to prescribe higher standards, with respect to sanitation or nutrition, than those prescribed by state law. It has a right to prescribe inspections for the enforcement of those higher standards, and to charge inspection fees therefor. The standards and inspection fees must be reasonable. Conversely, in the absence of higher sanitation or nutritional standards, the municipality may not lawfully prohibit the distribution and sale of the products, since in that case the Grade A rating by the State Health Department is sufficient *for all intra-state purposes.*

The two propositions argued by Beatrice on appeal are (1) that the provisions of

the Okmulgee ordinance requiring fees for the monthly or quarterly inspection of "every cow on every farm" are arbitrary, discriminatory and capricious, and are invalid and unconstitutional; and (2) the Okmulgee ordinance does not contain higher sanitation or nutritional standards than those prescribed by state law. We will consider the latter proposition first.

The record discloses that the technical and scientific provisions of the state law and the Okmulgee ordinance concerning such things as bacteria count, coliform count, process of pasteurization, reduction tests, etc., are substantially the same. The only distinctions between the two that could reasonably be said to have a bearing on sanitation or nutrition are as follows: (1) Okmulgee requires a higher butterfat content than the state law; (2) Okmulgee requires that the milk be cooled immediately after milking to 60 degrees and maintained at that temperature until delivered to the processor, whereas the comparable state requirement is 50 degrees; and (3) Okmulgee limits the elapsed time between milking and delivery to processor to 18 hours, and from milking to pasteurization to 24 hours, and the state law has no such requirement. However, under undisputed evidence in the record, the maximum time between milking and delivery to the Tulsa plant of Beatrice Foods Company is never more than 48 hours.

With regard to (1) above it is conceded that there is no issue in this case, since Beatrice agrees to meet the butterfat content requirement; also, it would seem that any inspection for the purpose of enforcing this standard would be made in the Tulsa plant, or in Okmulgee.

With regard to (2) above, and under undisputed evidence in the record, the Okmulgee requirement of cooling immediately to 60 degrees cannot be said to be a higher sanitation or nutritional standard than the state requirement of 50 degrees.

This leaves for our consideration the Okmulgee elapsed time requirements of 18 and 24 hours. Remarks of the trial court in the record indicate that he considered the temperature and elapsed time requirements together and concluded that the Okmulgee ordinance contained higher sanitation and nutritional standards than those prescribed by state law.

There is considerable doubt as to whether the Okmulgee ordinance contains higher *sanitation* standards. The expert witnesses testifying agreed that temperature and elapsed time before pasteurization have a direct effect upon the bacteria count, but that from the practical standpoint, pasteurization has the effect of killing all human disease producing bacteria in the milk. Such being the case, the bacteria count of the milk before pasteurization becomes immaterial from the sanitation standpoint.

However, it was the opinion of Dr. Isham, an expert testifying for defendant City of Okmulgee, that the elapsed time requirement was actually a higher *nutritional* standard. He testified that with the elapse of time before pasteurization the bacteria count in the milk increases; that the bacteria count in the milk may be decreased by a reduction in the temperature of the milk between milking and pasteurization; that the bacteria subsist by consuming milk sugar and milk proteins, converting the same into lactic acid; that the nutritional content of the milk is to that extent reduced; and that the pasteurization process does not restore the nutritional content so lost. His conclusion was in effect that since the Okmulgee ordinance limited the time between milking and pasteurization to 24 hours that the Okmulgee "time limit" assured a higher nutritional value in the milk notwithstanding the different standards of temperature requirements between the City and State. In response to a hypothetical question Dr. Isham testified in substance that where under the Okmulgee ordinance milk is cooled to 60 degrees and there is a maximum time lapse of 24 hours from milking to pasteurization the milk is more nutritional than when under state law the milk is cooled to 50 degrees and there is in prac-

tice a time lapse of 48 hours between milking and pasteurization.

Mr. Bland, an expert witness for Beatrice was asked the same hypothetical question and gave unequivocal testimony to the contrary. The record does not disclose whether this question could have been resolved by laboratory tests.

■ Under well established principles of appellate review, the judgment of the trial court is presumed to include a finding of every material fact necessary to support it. McGrath v. Eichoff, 187 Okl. 64, 100 P.2d 880. Since the judgment in this case was for defendant city of Okmulgee, we conclude that it is based upon a finding that the Okmulgee ordinance has a higher nutritional standard than the state law.

This finding is not directly attacked in the briefs of Beatrice Foods Company. On the contrary, in the briefs of Beatrice the testimony of Dr. Isham is referred to only briefly, and the discussion of the question of nutritional standards seems to be based on the assumption that the butterfat content requirements of the statute and the ordinance are the only nutritional standards involved. In view of the expert testimony of Dr. Isham, which was accepted by the trial court, the Beatrice position cannot be sustained. Beatrice does not attack the reasonableness or validity of the 24 hour elapsed time requirement *as such*; it raises no question as to whether the elapsed time requirement is actually a "standard" as that term is used in the statute, or whether "time" may be combined or considered in connection with "temperature" to constitute a standard.

■ We therefore hold that the requirement of the Okmulgee ordinance (24 hours from milking to pasteurization at its prescribed temperatures) constitutes a higher standard, with respect to nutrition, than those prescribed by state law.

Such being the case, under 63 O.S.1961 § 295.6, subd. D, above referred to, Okmulgee has the right to make inspections in order to enforce such higher standards. and in connection therewith may charge reasonable fees.

■ Beatrice argues, as its remaining proposition, that the provisions of the Okmulgee ordinance requiring the location of each dairy farm, the number and type of animals on each farm, the consent of owners for inspections and fees for the inspection of "every cow on every farm" on a monthly or quarterly basis are unreasonable, arbitrary and capricious, and for that reason invalid and unconstitutional. With that contention we agree. The Okmulgee ordinance affirmatively discloses that the fees concerned are computed substantially as follows: at a rate of fifty cents per cow for each inspection made on a monthly or quarterly basis, plus six cents per mile for each trip from Okmulgee to each dairy farm and return, said trips to be made on a monthly or quarterly basis. The ordinance requires that a cash deposit be submitted, with the application, sufficient to pay for one year's inspections.

It is apparent that the inspections and fees sought to be charged by the Okmulgee ordinance are not relevant to the enforcement of Okmulgee's higher nutritional standards imposed by the ordinance. They are relevant to the enforcement of standards which are equivalent to those of the state, however, the statute does not authorize a city to impose fees for the enforcement of equivalent state standards but only "reasonable sanitation and nutritional standards which are higher than those provided" by statute. This is necessarily so since "[a]pproval by the State Commissioner of Health for the use of a Grade A label on milk * * * shall constitute an acceptable rating for all intra-state purposes."

The inspection and fees sought to be imposed are not limited and relevant to the enforcement of Okmulgee's higher standard of nutrition and are not confined to that purpose. The City's statutory right to impose inspections and inspection fees is by statute limited to the enforcement of its reasonable higher sanitation and nutritional

standards. The inspections and fees imposed by the ordinance herein are not authorized.

Since we have concluded that Okmulgee does have a higher nutritional standard which it may enforce, but have further concluded that the inspection fee requirements to which Beatrice objects are unreasonable and invalid, it may be argued that Okmulgee should have proceeded to process the application without regard to the fee requirements and the information requested in connection therewith, and that the trial court therefore should have issued a writ of mandamus to that effect.

However, it should be remembered that the writ of mandamus is a writ of discretion, and not of right. It will not be awarded where the right to the relief sought is not clear and free from doubt. Porch v. Hayes, 205 Okl. 194, 236 P.2d 240. Beatrice did not offer to comply with the elapsed time requirement of the ordinance or to meet the nutritional result obtained by the ordinance, but merely argued that Okmulgee has no higher nutritional standard as contemplated by the statute. On the record before us we cannot say whether Beatrice could comply with the standard, or indeed whether it desires to do so. Under those circumstances, it was not an abuse of discretion for the court to refuse to issue the writ.

The judgment of the trial court is affirmed without prejudice to the right and duty of the trial court to entertain in this case, or in a separate action, an application by Beatrice Foods Company for a further hearing upon the question of whether Beatrice can and will comply with Okmulgee's higher nutritional standard; and if the court does so find, it should then hear evidence and make orders for such inspections as appear reasonably necessary to enforce such higher standards, and then direct Beatrice to make available to the City from time to time such sum or sums of money as appear reasonably necessary to cover the cost of such inspections, and to continue making such orders for inspections and costs until such time as the City has enacted a new ordinance imposing inspections and fees for the enforcement of its higher standards.

WELCH, DAVISON, JOHNSON, WILLIAMS, IRWIN and BERRY, JJ., concur.

BLACKBIRD, C. J., and HALLEY, V. C. J., concur in part and dissent in part.